FRANCIS F. PALMS AND MICHAEL W. O'BRIEN (APPEL-
   LANTS), AND CLOTILDE PALMS (APPELEE), v.
      CHARLES L. PALMS, MARTHA C. PALMS,
         BERTHA A. PALMS, VIOLA PALMS,
            CORINNE PALMS, FRANCIS PALMS,
               AND WILLIAM J. PALMS
                  (APPELLANTS).

68   355
f126  484
126   485
126   486
68    355
e135  187

*Construction of will—Perpetuities—Royalties under mining leases.*

The *final* decree in this case holds that the will and codicil, and each
   and every of the provisions thereof, are valid and effectual, and
   to be executed and carried out by the trustees therein named,
   according to the said several provisions, *except* as hereinafter
   specified.

   "The royalties under any mining leases heretofore executed by
the said Francis Palms, or the trustees named in said will, or that
may hereafter be executed by said trustees, shall be treated as
*principal* in the same manner as moneys received from the sale
of real estate during the minority of the youngest grandchild of
the said Francis Palms, living at the time of his decease, and
that any and all questions that may or can arise touching the
disposition of royalties accruing upon mining leases *after* the
majority of such youngest grandchild, shall in no way be
affected by this decree; but the issue shall be open for consider-
ation and adjudication as though this decree had not been
rendered.

   "That, in like manner, all questions that may or can hereafter
arise under the tenth clause of said will after the death of Francis
F. Palms and Clotilde Palms as to the right or power of the
remaining trustee, or trustees that may be appointed, to retain or
manage the share of any grandchild of said testator until such
child shall be of age, shall in no way be affected by this decree ;
but the same shall be open for consideration and adjudication as
though this decree had not been rendered."

Appeal from Wayne. (Jennison, J.) Argued June 7, 1887.
Decided February 2, 1888.

Bill filed to construe a will.   Francis F. Palms and

Michael W. O'Brien, complainants, and *all* of the defendants appeal from decree holding the will void, etc.   Decree reversed, and one entered as set forth in head-note.   The facts are stated in the opinion.

*Thomas M. Cooley* and *C. A. Kent*, for Clotilde Palms.

*Otto Kirchner* and *Ashley Pond*, for Francis F. Palms and Michael W. O'Brien.

*John Atkinson*, for defendants.

*Isaac Marston*, for infant defendants.

MORSE, J.  Francis Palms, a resident of the city of Detroit, on the twenty-sixth day of July, 1884, duly executed the following as his last will and testament:

" I hereby give, devise, and bequeath all my property to Francis F. Palms, Clotilde Palms, and Michael W. O'Brien, as trustees, and in trust for the uses and purposes following, to wit:

" 1. To collect all rents and other moneys owing to my estate; to sell, lease, repair, and improve any of my property; to invest and re-invest the proceeds thereof in lands in the city of Detroit, and interest and dividend paying securities; and to do all acts and to pay all necessary expenses for the care, protection, and management of my estate that I might do if alive.

" 2. To pay five thousand dollars to my brother, Ange Palms.

" 3. To pay one thousand dollars to the Little Sisters of the Poor of Detroit.

" 4. To pay one thousand dollars to the Saint Vincent Female Orphan Asylum of Detroit.

" 5. To pay, semi-annually, one-half of the net income of my estate to my son, Francis Palms, during his life, and the other half to my daughter, Clotilde Palms, during her life.

" 6. Upon the death of my son, to pay one-half of the principal of my estate to his children, in equal portions.  If no issue survive him, then the same to be paid to the children of my daughter upon her death.

" 7. Upon the death of my daughter, to pay one-half of the principal of my estate to her children, in equal portions.

If no issue survive her, then the same to be paid to the children of my son upon his death.

"8. Upon the death of either of my children leaving no issue, the entire net income of my estate shall be paid to my surviving child during his or her life.

"9. If any of my grandchildren die before their father (he being my son), or before their mother (she being my daughter), leaving issue, such issue shall be entitled to the share of such grandchild.

"10. The share of any grandchild who may be a minor upon the death of his father (he being my son), or of his mother (she being my daughter), shall remain a part of said trust-estate, and under the management of said trustees, until such child shall be of age. In that case said trustees shall make such allowance as to them may seem proper for the support and education of such grandchild.

"11. I hereby appoint Frederick E. Driggs as trustee of my estate, to fill the vacancy which may be made by the death, resignation, or incapacity of either of my said trustees, giving him the same interest and estate, and the same power and authority, as is hereby given to the trustees first herein named.

"12. If either of my children contest this, my will, and seek to have the same declared invalid, such child shall receive no portion of my estate, and in such case I direct that the whole net income thereof be paid to my other child during his or her life.

"13. I hereby appoint Francis F. Palms, Clotilde Palms, and Michael W. O'Brien the executors of this my will.

"In witness whereof, I, the said Francis Palms, have hereunto set my hand this twenty-sixth day of July, 1884.

"FRANCIS PALMS.

"Signed and declared by the said Francis Palms as and for his last will and testament in the presence of us (both being present at the same time), who, at his request, in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses.

"HENRY H. SWAN, Detroit, Michigan.
"ELIJAH W. MEDDAUGH, Detroit, Michigan."

On the third day of September, 1886, he duly executed the following codicil:

"I, Francis Palms, of Detroit, Michigan, having made my last will and testament, bearing date the twenty-sixth day of

July, 1884, do now make this codicil to be taken as a part of the same:

" *First.* I do hereby ratify and confirm said will in every respect, save as far as any part of it is inconsistent with this codicil.

" *Second.* I hereby direct that the royalties and other moneys received from leases of mineral lands, whether such leases be made by me during my life, or by my executors and trustees after my death, shall be considered as a portion of the capital of my estate, and shall be invested as such by my executors and trustees. The income derived from such capital to be paid to my children as in my will provided. The accumulation from this source not to continue longer than the minority of my grandchildren now living, after which the royalties and income from mineral lands shall be paid to my children.

" *Third.* I hereby remove the restriction in my will directing the executors and trustees to invest and re-invest the proceeds of my estate and lands in the city of Detroit, and interest and dividend paying securities, and hereby authorize my said executors and trustees to make such investments as in their judgment may be for the best interest of my estate.

" *Fourth.* If either of my children contest this codicil to my will, and seeks to have the same declared invalid, such child shall receive no portion of my estate, and in such a case I direct that the whole net income thereof be paid to my other child during his or her life.

" *Fifth.* It is my wish that my executors and trustees be not required to give bonds.

" In witness whereof, I, Francis Palms, have, to this codicil to my last will and testament, subscribed my name this third day of September, 1886, at said Detroit.

" FRANCIS PALMS.

" Signed and declared by the said Francis Palms as and for a codicil to his last will and testament, in the presence of us (both being present at the same time), who, at his request, in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses.

" E. W. MEDDAUGH, Detroit, Michigan.
" HENRY H. SWAN, Detroit, Michigan."

Francis Palms died at Detroit, November 24, 1886, leaving an estate valued at several millions of dollars. The will and codicil above set forth were duly probated and allowed as

the last will and testament of said deceased, and the executors duly qualified and entered upon their trust under it. In the early part of the year 1887 the executors filed their bill in the circuit court for the county of Wayne, in chancery, to obtain a construction of its provisions. The defendants in the suit are the minor children of Francis F. Palms, one of the executors, and a son of the deceased.

The complainants pray the court to determine and declare:

"*a*—Whether the trust expressed in and by said will, and vested in your orators and oratrix, is in conformity with the laws of this State, and particularly whether said will violates any of the provisions contained in chapters 213–216 of Howell's Annotated Statutes, and, if so, how far and wherein.

"*b*—Whether, if said trust conflicts with any law of this State so far as it relates to real property, it is also void so far as it relates to personal property.

"*c*—Whether said trust, so far as it extends beyond the life of your orator Francis F. Palms, and your oratrix, Clotilde Palms, violates any laws of this State, and, if so, how far, and whether such conflict, if any there be, affects the validity of said trust during the life-time of your orator Francis F. Palms, and your oratrix, Clotilde Palms, or during the life-time of either of them.

"*d*—Whether the provisions contained in the second paragraph of said codicil are in conflict with the laws of this State.

"*e*—Whether there is any other legal objection to said will or codicil.

"3. That your orators and oratrix may receive such further directions touching the meaning and effect of the several provisions contained in said will as shall seem meet to this court, and that if such trust is void, wholly or in part, they may be relieved therefrom so far as it is void.

"4. That they may receive such further relief and such other relief as may be agreeable to equity."

The court below decreed that the trust-estate devised by the will was void as contrary to law, and that the estate mentioned in said will and devised therein to the trustees, both real and personal, descended to the heirs as to the realty, and to those entitled under the statutes as to the personalty; and also declared that the clause in the codicil directing the accumulations of the royalties and other income of the min-

eral lands, of which the testator died seized, was also void as contrary to law.

All the defendants, and the complainants Francis F. Palms and Michael W. O'Brien, appeal from this decree to this Court.

Clotilde Palms is represented by counsel seeking to uphold the decision of the Wayne circuit, in chancery.

The various questions presented to the court by the bill in this cause were ably and elaborately argued before us by counsel of eminence and ability, but it seems to me that the solution of the main question does not involve many of the questions discussed before us. And the case, in my opinion, does not depend at all upon the amount of money involved or the magnitude of the estate.

If it be true that the accumulation of a great fortune by a single individual is a public misfortune and against public policy, yet, nevertheless, the power to govern that fortune and direct its course after the death of the owner, by *ante mortem* disposition, must be, under our laws and the policy of our institutions, identical with the authority of the poorer man to dispose by will of the few hundred dollars that he may have saved during his life-time. The law in this regard knows, and should know, no difference between the rich and the poor. Indeed, it could make no distinction of this kind without special legislation, contrary to our Constitution and the theory of our government.

The will of Francis Palms must, then, in the outset, be considered and tested as any other will would be, without reference to the amount it bequeaths or places in the hands of trustees. Much of the argument of counsel has been directed to theories and purposes of government as regards the accumulation and holding of vast estates, which, though correct in the abstract, in my mind have no place in this discussion, and can and should have no influence whatever in determining the validity of the trust or trusts contained in

this will. If this will would be valid if only one hundred dollars was involved, it must also be valid if it disposes of ten millions.

It is the wise and beneficent purpose of the courts, if possible, to uphold and sustain wills when there is no doubt whatever of the sanity and perfect competency of the testators to make them, and that they were executed without duress or any undue influence.

It is also considered the duty of the courts to so interpret the conditions of a will, where there is any obscurity or ambiguity of expression, as to carry out the intention of the testator, when such intention can be plainly gathered from the whole body of the instrument, and is a legal one.

And when the intent is manifest, and there are separate trusts or provisions which are not so connected together as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated or nullified if one were held legal and others illegal, and the legal can be separated from the illegal without doing injustice to any of the legatees or beneficiaries under the will, as their rights are indicated by the wishes of the testator therein expressed, the illegal trust may be cut off, or the invalid provision eliminated, and the legal one permitted to remain; thereby effectuating, as far as the law will permit, the will of the maker of the instrument.

In this case there is no question raised as to the competency of Francis Palms when he executed this will and codicil; nor is it claimed that any one influenced him in it It is admitted that it is the will and wish of a strong man, put in the very shape he wanted it, and marked and impressed throughout with his individual characteristics as a money-getter and money-saver.

One of the main objections to the validity of the trusts created is that this man, not satisfied with the building up of a vast estate in his life-time, sought to erect and maintain,

after his death, a great family inheritance; that he endeavored to extend the great power of his mind for accumulating riches too far into the future after his death, and to virtually handle his great property intact for too long a period beyond the grave, in opposition to the statute and the policy of our laws, and " the genius of a free, and especially of a commercial, people."

The intent of the testator is plain and unequivocal. In reality, leaving out a few small bequests, he divides his estate into two equal portions, the income of one portion to be enjoyed by his son, Francis F. Palms, the other by his daughter, Clotilde. This division and separation runs clear through all the provisions of the will, and thus, in the beginning, two distinct trusts are created. When Francis F. dies, the half upon which he has received the income becomes absolutely the property of his children, if any survive him, or the issue of any of them. If no issue survive him, it goes to the children of Clotilde, if any survive her. But the share of each is not to be paid until he or she is of age. It remains until then in the hands of the trustees. Upon the death of Clotilde, the other half goes to her children, if any survive her; if no issue survive her, it falls to the issue of Francis F. If either Francis F. or Clotilde die without issue, and the other survives, the whole income is paid to the survivor during his or her life, and the distribution of such half is postponed during that period.

The wish of the testator was to give his children only a life-estate, and to bequeath the fee to his grandchildren or their issue. It is plain that he did not intend that either Francis F. or Clotilde should inherit the body of the estate. And under the authorities the devise of the income to them for life, although embraced in a single paragraph, is, by the well-settled construction of similar clauses, a devise to each in severalty of a life-estate in one-half of the property. *Monarque v. Monarque,* 80 N. Y. 320; *Savage v. Burnham,*

17 Id. 561; *Everitt v. Everitt*, 29 Id. 39; *Stevenson v. Lesley*, 70 Id. 512; *Wells v. Wells*, 88 Id. 323; *Manice v. Manice*, 43 Id. 378; *Gilman v. Reddington*, 24 Id. 10. See, also, *Earl v. Grim*, 1 Johns. Ch. 494; *Schermerhorne v. Schermerhorne*, 6 Id. 70; *Moore v. Hegeman*, 72 N. Y. 376; *Purdy v. Hayt*, 92 Id. 447; *Tiers v. Tiers*, 98 Id. 568.

The decree of the court below cuts off the interest of the grandchildren, for whose benefit the will was made, and defeats the manifest intent of the testator. It creates a new will for him, radically different from his plainly expressed wish. This should not be unless the will as it stands is so perfectly repugnant to the law as to make it void *in toto*

It is claimed that the trust or trusts created by this instrument come within the statutes of this State against perpetuities, as found in chapter 213 of Howell's Statutes. The sections relied upon are as follows:

"Sec. 14. Every future estate shall be void in its creation which shall suspend the absolute power of alienation for a longer period than is proscribed in this chapter. Such power of alienation is suspended when there are no persons. in being by whom an absolute fee in possession can be conveyed.

"Sec. 15. The absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance of two lives in being at the creation of the estate, except in the single case mentioned in the next section.

"Sec. 16. A contingent remainder in fee may be created on a prior remainder in fee, to take effect in the event that the persons to whom the first remainder is limited shall die under the age of twenty-one years, or upon any other contingency by which the estate of such persons may be determined before they attain their full age."

If the tenth clause or paragraph in the will should be eliminated, there could be no possible claim that the trusts created by this will were invalid as within the statute. But, with this paragraph remaining and being a part of the instru-

ment, there is a possibility of an infraction of the law, if the trusts are carried out as therein directed.

Let us take the case of the half of the estate upon which Francis F. is to receive the income during his life. This cannot be disposed of during his life, which is one life. But upon his death each of his children of age takes absolutely his share immediately, and the others as soon as they are of age. Here is a separate trust for each of these children, none of which come within the inhibition of the statute. Only in case Francis F. leaves no child or the issue of any of his children surviving him at his death, does any part of this half of the estate fall under the ban of the law against perpetuities.

It is not an uncommon thing for a man to will only a life-estate to a child, and pass the fee to his grandchildren. It is done without question, and is lawful. The vastness of this estate cannot hamper or abridge the right that the law gives to all to thus dispose of property. That such a possibility of the seven children of Francis F. dying without issue before the death of their father exists cannot be denied, as all things are possible where death is concerned, but such a contingency is a very doubtful and most improbable thing. It would not be either good sense or good law, in my opinion, to defeat the plain intent and scheme of this will *in toto*, and from the beginning, because of the possible but doubtful happening of a very remote and unlikely event, or rather a complication of such events.

To suppose that all these lives would be cut off and ended without issue before Francis F. dies; that he will also die before Clotilde, and that she will marry and have children surviving her, which contingencies must also happen,—is something far beyond the ordinary probabilities of life and death, even if it be within the possibilities. It would seem as if the special interposition of famine or pestilence alone could thus destroy before their time the seven children of

Francis F. Unless these improbable events take place, the trusts, as regards one-half of the property, are valid. The manifest intent, as before said, is that the grandchildren of the testator shall take the fee of the estate upon the death of the children,—two lives in being. And the supposed invalidity of the tenth clause of the will concerns the grandchildren wholly, and not Clotilde or Francis F. Palms, or any rights granted them by the plain terms of the instrument.

It must be conceded, I think, without doubt, if we look at the whole scheme of the will, that the testator intended that his grandchildren, the children of Francis F. Palms, should take the fee of one-half in equal shares of the principal of the estate, upon the death of their father.

It is contended that the whole scheme of this will was to tie up and take out of the ways of business and commerce this great estate, and keep it intact as long as the law would admit; and that, in his eagerness to do so, in his intense desire to build up and maintain his family pride, in holding together this large amount of property, the testator stepped over the limits of the law; that his scheme is not the scheme of the will, unless such will can be carried out to the full extent that the remotest and most improbable event or events may lead to; and that, such unlikely possibilities or contingencies bringing the will under the ban of the statute, it must be determined that the whole scheme was built upon these possibilities, and must fall with them, and the estate be divided as if there had been no will.

I do not think so. In the first place, I cannot discern any particular or all-absorbing scheme or desire to build up, maintain, and hold together a great estate for any purpose or family pride, or to take the same out of the channels of trade and commerce. The trustees are authorized in the will to sell, lease, or repair any of the property; to invest and re-invest the proceeds of sales in lands, and in interest and dividend paying securities, and "to do all acts  *  *  *

that I might do, if alive." And in the codicil the restric .ion
as to the investments is taken away, and the trustees are
empowered to make such investments as in their judgment
may be for the best interests of the estate. The trustees can
be constantly buying and selling, changing daily, if they see
fit, the nature and character of the property intrusted to
their care. The avenues of trade and business are open to
them, as open as they would be to the natural heirs, pro-
vided no will had been made, except the property, if the trust
is fulfilled, cannot be squandered foolishly, spent in riotous
living, or thrown broadcast upon the street for passers-by to
pick up.

The will is nothing more nor less than a direction to the
trustees to keep and manage this property, prudently and
judiciously, for the grandchildren, who take upon the death
of the children.

It is argued that the policy of the law invites the imme-
diate breaking up of large estates, and a general division as
soon as possible of the money, so that it can be thrown out
to the commons, and gathered up in small portions by the
lucky ones who may have the opportunity of so doing, so
that the wealth of the country may be as evenly distributed
as possible. Granting that this may be so, there is as yet no
law that imposes upon any man the duty of placing his earn-
ings and savings at his death in the hands of those who will
squander and dissipate them the quickest, nor any prohibi-
tion against his passing by his children, and bestowing his
fortune upon his grandchildren, even if by so doing he keeps
such fortune intact while his children live. If it were not
for the direction in this tenth clause that the share bequeathed
to each grandchild shall not be paid to such grandchild until
he or she becomes of age, no one would pretend to deny the
complete validity of this will.

I can see in this provision no desire to hold this estate
together for the purposes claimed by the counsel for Clotilde.

Upon the death of Francis F., or Clotilde, if she have issue, the grandchildren who are of age take at once their shares out of the common whole, and the estate is thereafter lessened one share as the minority of each of the remaining legatees is ended. The testator plainly contemplated a segregation of the share of each grandchild, when of age, from a general mass after the death of the children, and a payment to such grandchild of such share. Each share, as it is liberated and paid over, will be released from the trust. The interests carved out of the trust are separable and distinct, and the will is to be construed as though in terms it had created a separate trust for each grandchild, and the issue of such grandchild. *Savage v. Burnham,* 17 N. Y. 571; *Everitt v. Everitt,* 29 Id. 39; *Stevenson v. Lesley,* 70 Id. 512; *Monarque v. Monarque,* 80 Id. 320; *Wells v. Wells,* 88 Id. 323, 333.

In relation to this provision, the testator evidently intended that the father and aunt of these beneficiaries, or their mother and uncle, if Clotilde should have issue, together with others, in whom he had confidence, should without bonds manage the share of each in the estate until the law would permit them to handle it themselves. If this tenth clause had not been inserted in the will, none of these grandchildren could have entered upon the management or possession of their share of the estate until of age. The law would place such share in the hands of a guardian, who could not alienate the real estate, except upon the order of a competent court for good reasons shown, as provided by the statutes of our State. The property would in such case be tied up more effectually than if it remained in the hands of the trustees under the will, with the power to sell and buy daily given them in such instrument. I can see in this provision only a desire on the part of Francis Palms to grant his property in fee to his grandchildren, and to guard and protect it against waste and dishonesty until they were each able, under the

law, to possess and manage it themselves.  It is no more in effect than appointing guardians for them, which, if he had been their father, he might have done by will under the statute.  How. Stat. § 6311 (Amend. Laws of 1883, p. 2).

This wish to guard, protect, and save the share of each grandchild animates the whole will.  Such a wish is laudable and praiseworthy, and should not be defeated or impaired unless of necessity.  No man who has watched the courts, and seen the too often futile attempts of such beneficiaries as these to regain their inheritance, wasted by fraud or squandered without reason, can wish the law to be otherwise than an encouragement and protection to a father or grandfather who seeks to preserve to his blood the property that a life of toil and sacrifice has earned and saved, if his effort to do so is confined within reasonable limits, as in this case. I think that if the remote possibility shall occur that this tenth clause of the will shall infringe upon the statute by the continuance of any of the several trusts beyond the two lives in being of Francis F. and Clotilde Palms, and if it should cover property illegally restrained from alienation, it can and should be treated as eliminated and void as to the share or shares of those who shall not have arrived at age at the time of the expiration of such lives.  This can be done without interfering with or destroying the main purpose and intent of the testator.  The main object of this will, as heretofore said, was to grant only a life-estate to his children, and the fee in equal shares to his grandchildren.  This purpose is not to be defeated or nullified because he went further, and, as an incident of the main purpose, undertook to protect the minor beneficiaries until they were capable under the law of possessing and using the property absolutely as their own.  If such desired and expressed protection should by any possibility reach over the limits of the law, it can be lopped off under all the authorities.

Upon the death of Francis F. Palms with children living,

there can be no trouble as to one-half of the estate. If he should outlive all of his children and their issue, and Clotilde should marry and be living with issue at his death, then her children should take this half at her decease in fee, discharged of the trust imposed by this tenth clause. In relation to the other half of this estate, if Clotilde should die without issue before Francis F., his children should take, as if this tenth clause were eliminated, at his death, the fee absolute of this half. If Clotilde should marry, and have living issue at her death, the same principle would govern as in the case of Francis F., heretofore stated, and the statute would not be violated with the tenth paragraph remaining as a part of the will. Also if she has no issue, and outlives her brother, the statute is not infracted by the terms of the will as it now stands. This half would in such case be incapable of alienation during her life, and on her death, during the possible minority of some of the issue of Francis F., which would be but two lives in being, counting the minority as one life.

I find in this will a separate trust for every grandchild. Those who are of age upon the death of their parent take at once an absolute fee under the will as it stands. As to them the will is a valid one. The trusts as to them cannot be invalidated because of the provisions as to those who shall be minors at the decease of their father, in the case of the children of Francis F., or of their mother, if Clotilde has children. *Purdy v. Hayt*, 92 N. Y. 446, 454-458; *Tiers v. Tiers*, 98 Id. 568; *Kennedy v. Hoy*, 105 Id. 134, 137 (11 N. E. Rep. 390); *Van Schuyver v. Mulford*, 59 Id. 426; *Ward v. Ward*, 105 Id. 68, 76 (11 N. E. Rep. 373); *Van Vechten v. Van Veghten*, 8 Paige, 128; *Smith v. Edwards*, 88 N. Y. 104, 105; *Wilson v. Odell*, 58 Mich. 533 (25 N. W. Rep. 506); *Toms v. Williams*, 41 Id. 552 (2 N. W. Rep. 814); Gray, Perp. §§ 389, 391, 441.

As to these grandchildren who may be minors at the death

of the holders of the life-estate, and in whose case, by some of the possibilities heretofore stated, the clause that the trust shall continue until they shall become of age may come in conflict with our statute against perpetuities, and if it should, they must take, in my opinion, under the authorities, the fee at once discharged of the invalid trust. This limitation of their right to possess and enjoy their share of the estate is an ulterior one, and depending upon a possible contingency which may never happen. It does not affect the primary purpose of the will or the trust in their case. The rule is well settled that such a limitation, though invalid, will not be allowed to defeat the primary dispositions of the will, but will be cut off in the case of a trust which is not an entirety, as well as in the case of the limitation of the legal estate. *Harrison v. Harrison,* 36 N. Y. 543; *Savage v. Burnham,* 17 Id. 561; *Manice v. Manice,* 43 Id. 303; *De Kay v. Irving,* 5 Denio, 646; *Knox v. Jones,* 47 N. Y. 389; *Tiers v. Tiers,* 98 Id. 568; *Toms v. Williams,* 41 Mich. 567 (2 N. W. Rep. 814); Gray, Perp. § 247. Therefore it is my conclusion that the trusts expressed in said will are valid and in conformity with the laws of this State, except in the unlikely contingencies heretofore noted; and that, if any of such possibilities may happen, such an event or events cannot and do not affect in any way the validity of the trusts during the lifetime of either Francis F. or Clotilde Palms. And in such case or cases the tenth clause of the will, so far as conflicting with the statute, must be treated as a nullity; and no part of the will.

The personal property coming within the trusts is governed in this State by the common-law rule, which limits the suspension of the power of alienation to the period of any life or lives in being and 21 years afterwards. The trusts here cannot extend beyond two lives in being, and the minority of any grandchild after the death of the testator's son and daughter. Gray, Perp. § 171; *Toms v. Williams,* 41 Mich.

562 (2 N. W. Rep. 814); *Wilson v. Odell,* 58 Id. 536 (25 N. W. Rep. 506).

The remaining question to be disposed of is in relation to the validity under our laws of the second paragraph of the codicil.    Unless the royalties and other moneys received from leases of mineral lands can be treated as a part of the price for which lands are sold, the accumulation therein directed is unquestionably void.    Such accumulation is to commence at once, and may be for the benefit of persons not yet in being. How. Stat. § 5553.    It is insisted by counsel, in favor of the validity of this clause in the codicil, that royalties are in no sense rents; that the moneys to be received upon the leases of mineral lands are not paid—

"For the use of the lands, but for what must be regarded as an integral part of the land, or as property covered up by and concealed in the earth."

They are neither rents nor profits.

At the time of the death of the testator there were no open mines upon any of his lands, but, 14 days before his death, he made a mining lease of the iron ore upon 160 acres of land, located in the Upper Peninsula.    The lease ran for 20 years, and provided for the payment of a royalty of 75 cents upon every gross ton, 2,240 pounds, of iron ore mined upon the premises.    The testator, by the terms of the codicil, evidently contemplated that this ore to be mined was a part of the capital of his estate.    The question for us to determine is whether this ore, so to be taken out and carried away, is in law sold in this lease as timber would be sold, or whether the royalty to be paid can be considered as the rent or profit of the land.

It seems to me that the royalty to be received upon this lease is simply a sale of the ore, which is a part of the land, and of the value of the land.    If the land, any certain description of it for instance, is worth $10,000 more because

there is iron ore upon or under it than it would be without it, or if the whole value of such land should be the ore it contains, as is sometimes the case, then the taking out of the ore eats out daily the value of the land, and in fact, in the end, destroys it. The lessor sells in one instance the chief part of the land, and in the other the whole of it in reality, as what is left is not worth the payment of taxes upon it. It is nothing more nor less than the sale of all the iron ore in the land that can be taken out in 20 years, as one would sell all the pine timber that could be cut and taken off within a certain period. These leases are so regarded in Pennsylvania, and the royalties treated as part of the real estate. *Fairchild v. Fairchild*, 9 Atl. Rep. 255; *Stoughton's Appeal*, 88 Penn. St 198; *Scranton v. Phillips*, 94 Id. 15, 22; *Sanderson v. Scranton*, 105 Id. 469; *D., L. & W. R. R. Co. v. Sanderson*, 109 Id. 583 (1 Atl. Rep. 394); *Hope's Appeal*, 3 Atl. Rep. 23.

But it is also claimed that, in any event, this clause of the codicil is void because it directs that the accumulation shall continue during the minority of the grandchildren now living, seven in number, and therefore illegally suspends the power of alienation beyond two lives in being, counting the minorities as lives. This fund received from the royalties must be treated, under my view as heretofore stated, the same as moneys derived from the sales of real estate. It does not come under the prohibition against the accumulation of rents and profits found in sections 5553 and 5554 of Howell's Statutes. Therefore, under this codicil, the children take a life-estate in the proceeds obtained by the royalties, the same as under the will they take the life-estate in the general body of the property. The only effect of this codicil is to turn over to them, in case they or either of them outlive the minority of the youngest grandchild now living, a part of the fee of the estate, so much thereof as thereafter during their lives, or the life of one, shall be obtained by

royalties.    If this clause of the codicil shall be declared void, it would be a detriment possibly, rather than a benefit, to Francis F. and Clotilde Palms.    Under it they may receive a part of the capital of the trust-estate; without it, these royalties must be preserved as a part of the *corpus* of the estate to pass to the grandchildren in fee as does the other property.    It will be noticed that this codicil does not direct that this accumulation shall continue absolutely to the end of the minority of the youngest grandchild.

"The accumulation from this source *not to continue* longer than the minority of my grandchildren now living, after which the royalties and income from mineral lands shall be paid to my children."

The true construction of this codicil is that he meant that these royalties should be treated and used as a part of the capital of the trust fund, and to be divided among his grandchildren the same as the other property, except in case those living became of age before his children died, then the children to have the royalties, gaining so much of the property absolutely and in fee.    Even in that case the distribution of these royalties would not be postponed at all beyond that of the other property.    Therefore, unless these living grandchildren all become of age before the death of both Francis F. and Clotilde Palms, the maintenance or rejection of this clause of the codicil can make no difference in the disposition of the estate.

Although, individually, I am inclined to hold this clause of the codicil, if such contingency should arise, void, so far as I have been able to investigate the question, yet I do not consider it, regarding the royalties as not rents and profits, at all material until such possibility occurs, because it cannot until then affect in any way the disposition or distribution of the estate, as such royalties go with the body of the property, and will be governed by the rules laid down as to that, in our view of the construction of the will.    When the contingency

arises, if it ever does, the opinion of the court can be taken upon the validity of this clause of the codicil, if those interested should find the interest obtained by reason of the royalties of sufficient value or importance to ask a construction thereof.

In considering this case, we have assumed that there was real estate on which the power of alienation was restrained. So far as the will covers personalty, no part of it is within any statute or common-law prohibition. But under this will all the realty is subject to sale by the trustees, and, if any but contingent interests were involved in doubt, we should be called upon to decide whether the will really creates any restraints at all. This question was not as fully argued as we should like to have it, if it were necessary for our decision. But as it is a very remote contingency that trusts will have to be executed for any one after the expiration of the two life-tenancies, it would be going further than is desirable to give a decision upon interests that do not now exist, and may never exist, so as to bind persons who cannot be identified.

The decree of the court below must be reversed, and the trusts be declared valid throughout, except so far as any controversy may hereafter arise under the tenth clause of the will, or the second clause of the codicil, in the contingencies pointed out in this opinion; such controversies to be hereafter settled when they arise.

The costs of the litigation to be taxed against the estate of Francis Palms, and to be paid out of the income thereof.

CAMPBELL, J, concurred with MORSE, J.

CHAMPLIN, J.  On the twenty-sixth day of July, 1884, Francis Palms, a resident of Detroit, Michigan, duly made, published, and declared his last will, in and by which he gave, devised, and bequeathed all of his property to Francis F. Palms, Clotilde Palms, and Michael W. O'Brien, as trustees, and in trust for the uses and purposes therein declared.

By the first clause the trustees were directed and empowered to collect all rents and other moneys owing to the testator's estate; to sell, lease, repair, and improve any of his property; to invest and re-invest the proceeds thereof in lands in the city of Detroit, and interest and dividend paying securities; and to do all acts and to pay all necessary expenses for the care, protection, and management of his estate that he might do if alive.

By the second, third, and fourth clauses of his will he directed certain specific legacies to be paid.

By the fifth clause he directed his trustees to pay, semiannually, one-half of the net income of his estate to his son, Francis Palms, during his life, and the other half to his daughter, Clotilde Palms, during her life.

By the sixth clause he directed that upon the death of his son his trustees should pay one-half of the principal of his estate to his son's children, in equal portions. If no issue survived him, then he directed the same to be paid to the children of his daughter upon her death.

By the seventh clause he directed that upon the death of his daughter his trustees should pay one-half of the principal of his estate to her children, in equal portions. If no issue survive her, then the same to be paid to the children of his son upon his death.

By the eighth subdivision of his will he declared that, upon the death of either of his children leaving no issue, the entire net income of his estate should be paid to his surviving child during his or her life.

He further directed by the ninth clause that, if any of his grandchildren die before their father (he being his son), or before their mother (she being his daughter), leaving issue, such issue shall be entitled to the share of such grandchild.

By the tenth clause he declared that the share of any grandchild who may be a minor upon the death of his father, or of his mother, shall remain a part of said trust-

estate, and under the management of said trustees, until such child shall be of age. In that case the said trustees were directed to make such allowance as to them might seem proper for the support and education of such grandchild. The testator then provided for and appointed a trustee to fill any vacancy caused by death, resignation, or incapacity of the trustees named.

By the twelfth clause he declared that if either of his children contested the will thus made, and sought to have the same declared invalid, such child should receive no portion of his estate, and in such case he directed that the whole net income thereof should be paid to his other child during his or her life.

He then appointed his trustees executors.

On the third day of September, 1886, the testator made and published a codicil, by the second clause of which he directed that the royalties and other moneys received from leases of mineral lands, whether such leases were made by him during his life or by his executors and trustees after his death, should be considered as a portion of the capital of his estate, and should be invested as such by the executors and trustees; the income derived from such capital to be paid to his children as in his will provided. The accumulation from this source was not to be longer than the minority of his grandchildren then living (at the time the codicil was made), after which the royalties and income from mineral lands should be paid to his children. By the third clause of his codicil he removed the restriction directing the executors and trustees to invest and re-invest the proceeds of his estate in lands in the city of Detroit, and interest and dividend paying securities, and authorized his executors and trustees to make such investments as in their judgement may be for the best interests of his estate. He then made the same provision in case either child shall contest the validity of the codicil as that contained in the twelfth clause of the will.

On the twenty-fourth of November following the execution of the codicil Francis Palms died at Detroit. His will and codicil were properly presented to and were admitted to probate in the probate court of the county of Wayne. At the time of his death he had two children living, Francis F. Palms and Clotilde Palms. Clotilde Palms was of full age, and unmarried. There were seven children of Francis F. Palms living at the time of the testator's death, all minors. No other children or grandchildren or other issue of the testator were living at the time of his death. He left no widow. He died seized of real estate in this State worth over $1,000,000, and of personal estate worth over $100,000.

The executors and trustees named in the will qualified and entered upon their duties, but, entertaining doubts relative to the validity of some of the provisions of the will, filed their bill in the circuit court of the county of Wayne, in which the minor children of Francis F. Palms are made defendants, and pray as follows:

"1. That the defendants may answer this bill fully.

"2. That this court may declare by its final order and decree:

"*a*—Whether the trust expressed in and by said will, and vested in your orators and oratrix, is in conformity with the laws of this State, and particularly whether said will violates any of the provisions contained in chapters 213–216 of Howell's Annotated Statutes, and, if so, how far and wherein.

"*b*—Whether, if said trust conflicts with any law of this State so far as it relates to real property, it is also void so far as it relates to personal property.

"*c*—Whether said trust, so far as it extends beyond the life of your orator Francis F. Palms, and your oratrix, Clotilde Palms, violates any laws of this State, and, if so, how far, and whether such conflict, if any there be, affects the validity of said trust during the life-time of your orator Francis F. Palms, and your oratrix, Clotilde Palms, or during the life-time of either of them.

"*d*—Whether the provisions contained in the second paragraph of said codicil are in conflict with the laws of this State.

"*e*—Whether there is any other legal objection to said will or codicil.

"3. That your orators and oratrix may receive such further directions touching the meaning and effect of the several provisions contained in said will as shall seem meet to this court, and that if such trust is void, wholly or in part, they may be relieved therefrom so far as it is void."

The infants answered by their guardian *ad litem*, and submitted their rights and interests to the protection of the court.

Replication was filed, and proofs taked in open court, from which it appears that the testator, at the time of his death, was seized in fee of lands in Michigan, Wisconsin, and Texas; that his personal property consisted of bank, insurance company, manufacturing, railroad, and other corporation stocks, and various forms of interest-bearing obligations; that he owned what is known as mineral lands, situated in the Upper Peninsula of Michigan, but no mines had yet been worked; that he had executed but one lease of mineral lands, but no royalties had been received therefrom. This lease appears to have been executed October 15, 1886. It further appears that the net income from the estate exceeds $100,000 annually, and is likely to increase.

A decree was entered in the court below declaring the will and codicil wholly void as being contrary to law, and that the estate left by the testator descended to those entitled under the statute in cases of intestacy. From this decree the complainants Francis F. Palms and Michael W. O'Brien and all of the defendants appeal. The legatees were not made parties to the bill, and their interests have not been represented before the court.

In construing wills, it is well settled that the intent of the testator must be ascertained and carried into effect so far as it legally can be done. And the intent must be gathered from the whole will taken together. If it contains provisions which are prohibited by law, and those provisions are not

inseparably connected and interwoven with the general
scheme of the testator, which otherwise is valid, and their
rejection would not prevent the general scheme of the tes-
tator from being carried into effect according to his inten-
tion, then the valid portions of the will may be upheld, and
the illegal portions declared void.    Whether or not this case
comes within the principle enunciated will be considered
further on.

The will disposes of both real and personal property, and
subjects both to the same trusts.    Our statutes have modified
the rules of the common law relating to what are called per-
petuities, as connected with real estate, and we have adopted,
but with slight variations, the Revised Statutes of New York
upon the subject, with this significant exception :    While the
statutes of New York relate to and regulate the subject as
applied to both real and personal property, ours have adopted
only that portion relating to real property, and future inter-
ests connected therewith.    The result is that we have two
rules regulating the disposition of property,—one, the statute
applying to real property; and the common law, to the cre-
ation of future interests in the disposition of personal prop-
erty.

The difference between the two rules is material.    By the
statute, future estates in land, to be good, must take effect,
if at all, within or at the expiration of two lives in being at
the creation thereof, with a single exception not material to
be mentioned here.    By the common law no future interest,
subject to a condition precedent, is good, unless the condition
must be fulfilled, if at all, within 21 years after some life in
being at the creation of the interest.    Hence if the estate
left by Francis Palms were entirely personal, no difficulty
could arise with reference to that portion given to the chil-
dren of Francis Palms.    The distribution by the will to these
children must, in any event, take effect within two lives in
being and 21 years; for all his children must reach majority

if the lives upon which it is limited should die the next moment after the testator's death. The disposition does not conflict with the common-law rule as to perpetuities.

Had the will directed the real estate to be converted into personalty, it would in equity have been so treated, and the tenth clause would in that event have been valid. But the testator did not so direct. It authorizes investments to be made as the trustees shall deem for the best interests of the estate, and to lease, repair, and improve the property confided to their management, and contemplates that the trust property may remain real estate. Neither do I think it proper that the real estate and the personal property devised to the trustees, as it came to their hands, should be kept separate, in order to apply to each the rules controlling their disposition. The testator has placed it all in one trust, and subjected it to the same disposition. He has made no distinction, and I think it clear that we can make none for him. If, therefore, the trust as to any portion of the will must fail because unauthorized, it must fail to both classes of property.

The trusts contained in this will are express as well as active trusts, and, in so far as they are valid, vest the whole estate in the trustees, in law and in equity, subject only to the execution of the trust; and the persons for whose benefits the trust was created take no estate or interests in the lands, but they may enforce the performance of the trusts in equity. How. Stat. § 5578. By another section of the statute it is provided that no person beneficially interested in a trust for the receipt of the rents and profits of lands can assign or in any manner dispose of such interest. How. Stat. § 5851. It is therefore apparent that, treating all the provisions of the will as valid, the estate of the trustees will continue, or may continue, 21 years after the expiration of the two lives upon which it is limited, so far at least as there may be minor grandchildren of the testator living at that time.

It will be observed that no part of the principal of the

testator's estate is bequeathed to his own children, but the rents, profits, and income are given to them for life, share and share alike. This is equivalent to a devise to them of a life-estate in the property. *Monarque v. Monarque*, 80 N. Y. 324. Upon the death of the testator's son, one-half of the principal of his estate is directed to be paid to his son's children in equal portions; if either of such children die before their father, leaving issue living at the time of his death, such issue to take its parent's share. It appears that it was the intention of the testator that after-born children—that is, children born after the death of the testator—should share in the distribution to be made at the death of their father or mother. The share which each grandchild should take was contingent, not only upon surviving its parent, but also upon the number born and living at the death of such parent. The persons who should take, and the number into which the shares were to be divided, were contingent and uncertain until that time arrived. Until the death of Francis Palms, the testator's son, this half of the estate is vested in the trustees. There is no direct gift to the testator's grandchildren, but simply a direction for a division of one-half of the estate among them after the death of the testator's son.

"Where there is no gift, but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting will not take place until that time arrives." *Warner v. Durant*, 76 N. Y. 133; *Smith v. Edwards*, 88 Id. 92; *Shipman v. Rollins*, 98 Id. 311; *Delafield v. Shipman*, 103 Id. 467, 468 (9 N. E. Rep. 184); *Everitt v. Everitt*, 29 Id. 84.

In *Smith v. Edwards*, Finch, J., said that—

"It has been often held that, if futurity is annexed to the substance of the gift, the vesting is suspended."

And that,—

"Where the only gift is the direction to pay or distribute

at a future time, the case is not to be ranked with those in which the payment or distribution only is deferred, but is one in which time is of the essence of the gift."

The gift to the children of Francis Palms will not vest until the death of Francis. Such was the intention of the testator as gathered from the terms of his will. At that time I think he contemplated and intended a division and distribution should be made among all the children of his son, Francis Palms, then living, and the issue, if any there should be, of any deceased grandchild. The only doubt that can be raised against such intention is the tenth clause of his will, where he directs that "the share" of any grandchild who may be a minor upon the death of his son, Francis, shall remain a part of said trust-estate, and under the management of said trustees, until such child shall be of age. It is inferred by this language, by those who contest the validity of this will, that the testator did not intend that any part of his estate should vest or be segregated from the entire body of the estate until all the minor children living at the time Francis dies shall arrive at the age of 21. I do not regard this as a correct construction of the will. It is only the minor's "share" that is to remain a part of the trust-estate. The whole estate is not directed to remain in the hands of the trustees. Too much weight is placed upon the expression, "shall remain a part of the trust-estate." The implication that, if it remains a part, the whole must also remain to constitute it a part, is not sufficient to overcome the express direction contained in the sixth clause to pay over. The tenth was an attempted modification of the sixth, as to the share of minor grandchildren. If it shall be held to have the effect to modify the sixth clause, so as to postpone the vesting until the minor shall arrive at the age of 21, it would be void as an undue restraint upon alienation. Conceding this to be so, the question then arises whether, that clause being void, the whole will is void.

It seems now to be well established that the general intent of a testator may be sustained by cutting off a void trust, which is separable from other valid trusts and dispositions, and not an essential part of the general scheme.

The doctrine was applied in *Woodgate v. Fleet*, 64 N. Y. 573. That case was in many of its aspects quite analogous to the one under consideration. There was a trust-estate to continue during one life, and until a person named should arrive at 21 years, which was equivalent to another life. When that period arrived the trustees were directed to pay to him and the grantor's wife their respective portions of the estate, such proportions to be determined by the number of children of the grantor and his wife who shall be living when the period for distribution arrived; the grantor declaring it to be his express intention that the property should go to and be divided among the said Martha (his widow), John K. (his reputed son), and all lawful children of the grantor who shall be living at the time of distribution, share and share alike. If there were minor children at the time named for distribution, the share of each child should be held in trust for them by the trustees until said children shall arrive at lawful maturity. The trustees were given power to sell and convey the trust-estate, or any part thereof, and apply the proceeds for the benefit of the *cestuis que trustent*. The main distinction between that case and the one at bar, so far as relates to retaining the shares of the minor children in the hands of the trustees until they reached lawful age, is that in that case the trustees had in the meantime no power to receive and apply rents or income, nor was it said that the trustees should continue to hold as before, but simply that the shares should be held in trust, no trust being specified. In this case the trustees are to manage the shares, receive the rents and income, and make such allowance as to them seems proper for the support and education of such grandchild;

thus continuing it as an active trust in the hands of the trustees.

Judge Rapallo held in that case that it was a mere passive trust, and that the title vested and passed legally to the beneficiary. But, even if it had been an active trust, he held that the direction to hold the shares during infancy should be considered illegal and void; and, as it was a merely incidental and practically immaterial provision, the failure of it should not defeat the main intent of the grantor. The principal has been acted upon in numerous cases, some of which I cite. *Harrison v. Harrison,* 36 N. Y. 543; *Manice v. Manice,* 43 Id. 384; *Parks v. Parks,* 9 Paige, 107, 117; *Irving v. De Kay,* Id. 521, affirmed in 5 Denio, 647; *Rogers v. Ludlow,* 3 Sanf. Ch. 104; *Haxtun v. Corse,* 2 Barb. Ch. 506; *Savage v. Burnham,* 17 N. Y. 561, 572; *Post v. Hover,* 33 Id. 593; *Wright v. Horne,* 8 Mod. 222; *Cooke v. Stationers' Co.,* 3 Mylne & K. 262; *Carrick v. Errington,* 2 P. Wms. 361; 2 Jarm. Pow. Dev. 32; *Kane v. Gott,* 24 Wend. 665; *Williams v. Williams,* 8 N. Y. 325, 339; *Oxley v. Lane,* 35 Id. 350; *Lang v. Ropke,* 5 Sanf. 363, 371.

No branch of the law calls for a more liberal construction and conservative action on the part of courts than in that which relates to the exposition of last wills and testaments, in order to preserve and carry out, as far as possible, the intention of the testator. Mr. Justice Cowen, in speaking of this subject in *Kane v. Gott,* said:

"The most able and safe judges have said that the court should be astute in allowing it a comprehensive operation for the giving effect to all instruments, and especially to last wills and testaments; and though some parts may be contrary to the rules of law, yet all other parts should be saved. Any court acting systematically upon the opposite principle would be a great evil."

By the sixth clause of the will the testator expressly directs his trustees to pay over, upon the death of his son, one-half of the principal of his estate to his children in equal

shares. It plainly appears that his intention was that upon
the happening of that event the half of the principal of his
estate should fully vest in his grandchildren in equal shares;
if any had died leaving issue, such issue to take its parent's
share. Such was the general scheme and intention, as
expressed in the will. The superadded tenth clause was
intended to cover a contingency that might or might not
happen, simply as a temporary provision, not affecting the
general scheme of the will. He intended that they should
take the same share as those who had reached majority at
the time of their father's death, and to hold the tenth clause
alone void will carry out the main intent of the testator. In
holding thus no part of the estate will have to be distributed,
as in cases of intestacy, as all the grandchildren will take
equally under the sixth clause.

Having reached the conclusion that, if the tenth clause is
invalid as unduly restraining alienation, there remain valid
trusts which the trustees should execute, perhaps I ought to
stop here, for the reason that, whatever might be decided
now with reference to the validity or invalidity of the tenth
clause, the decision cannot bind children who may be here-
after born who would be affected by it. I wish, however, to
record my opinion upon the point raised by counsel that,
whenever the will confers upon the trustees a power to sell,
the instrument cannot violate the statute against restraints
upon alienation of real estate. My impressions are decidedly
that this feature does not take trust-estates out of the opera-
tion of the statute, for reasons stated in *Brewer v. Brewer*,
11 Hun, 147, and affirmed in 72 N. Y. 603, and cited and
applied in *Hobson v. Hale*, 95 Id. 588, 609.

The statutes against perpetuities are directed against pro-
visions in conveyances by will or deed which prevent the
vesting of estates *in the beneficiaries;* and, when such vesting
is postponed beyond the limits allowed by law, the provision
is void as being too remote. It can make no difference

whether, during the time which shall elapse before it vests in the beneficiary, the estate vests in trustees, or is by them transferred to others than the beneficiary, and the proceeds and avails are held by the trustees subject to the trust; the policy of the law is defeated unless the contingency happens when the estate shall vest in the beneficiary within the prescribed limits. There would be but little use in statute or common-law restrictions against perpetuities, and the tying up of estates to await the happening of future events, if they can be avoided by merely clothing the trustees with power of sale, but subjecting the proceeds to the trusts declared, and by this simple device such postponement of the vesting of contingent interests be validated.

*Thatcher v. St. Andrew's Church*, 37 Mich. 264, was a deed of trust. It was made by a married woman for her own benefit, and that of her husband, if he survived her. After their death the fee was given to St. Andrew's Church. The trustees were authorized to hold the property to pay funeral expenses of husband and wife, and other expenses to which they had been put, and fees for their services. There was also a power of sale given to the trustees, and in certain emergencies to mortgage the property. The trustees were not authorized to sell and re-invest, but only in case the rents were not sufficient to carry out the purposes of the trust. In other words, it authorized a sale to close the trust, not to continue it. The case was rightly decided, but I cannot accede to the proposition—

"That the absolute power of alienation is not suspended where the instrument gives the trustees power to dispose of the property at their option. Where power is given to convey the trust-estate, the absolute power of alienation can in no possible way be said to be suspended."

Doubtless the proposition is true as applied to the alienation of any particular property, but it seems that the object and purpose of the law was not kept in view in the opinion.

The fact that there is a power of sale of the trust property can have no bearing upon determining the validity of the trust as postponing the ultimate vesting of the trust-estate in the beneficiary. If the trust-estate is tied up longer than the law allows, it is void. The later English cases and text-writers hold the same opinion. *L. & S. W. Ry. Co. v. Gomm,* 20 Ch. Div. 562, 573, 582; *In re Edmondson's Estate,* L. R. 5 Eq. 389; *Hobbs v. Parsons,* 2 Smale & G. 212; *Courtier v. Oram,* 21 Beav. 91; *Garland v. Brown,* 10 Law T. (N. S.) 292; Williams, Sett. 32, 33; Jarm. Wills (4th ed.), 281, 282; Theob. Wills (2d ed.), 434; Mars. Perp. 178; 45 Law T. 339.

The statutes of Wisconsin are also similar to those of our own relative to estates in real property, and the supreme court of that state has recently held that the authority in the trustees to sell and re-invest, for the purposes of the trust, where such state of things must continue under the will for a longer period than two lives in being at the creation of the estate, is such a suspension as must be adjudged contrary to the statute, and therefore void. *Ford v. Ford,* 33 N. W. Rep. 188.

It is unnecessary to pursue the half of the principal given to the children of Clotilde, as it is governed by the same rules as those already considered.

One other question remains to be considered. It is urged that the second clause of the codicil is void as being in conflict with the statute, because it suspends the power of alienation more than two lives in being, viz., during the minority of the grandchildren living at the death of the testator, since the two lives in being may die before the minorities expire; and also that it is void because it directs an unauthorized accumulation of the rents.

The last objection it will not be necessary to notice, because, if the position is correct, it is remedied by section 5556, How. Stat.

As to the first objection, a careful reading of this clause

discloses that it was not the intention of the testator to continue the accumulation longer than the lives of his son and daughter. Indeed, it is apparent that he contemplated that his son and daughter would outlive the minority of the grandchildren; for he directs that the accumulation shall not continue for a *longer period* than the minority of his grandchildren *then* living, after which the royalties and income were directed to be paid to his children. The intent of the testator appears to have been to suspend the payment of the income to be derived from leases of mineral lands for a period not exceeding the minority of his grandchildren then living, for the purpose of adding such income to the principal of his estate. The income from this new capital was to be paid to his children as provided in his will. Upon the death of his children, this trust must cease. There were two periods at which the trust as to this accumulation should cease; the happening of either would terminate the other. It was not to continue longer than the lives of his two children, and might terminate before their death. The clause, therefore, does not militate against the statute restricting the power of alienation.

The conclusions I have reached are:

1. That the tenth clause of the will unduly restrains the power of alienation, and is void.

2. That the invalid clause does not affect the validity of the remaining trusts in the will; but that the will must be read and its trusts executed the same as if the tenth clause were stricken out.

3. That the second clause of the codicil is valid.

4. That the decree of the circuit court for the county of Wayne, declaring the will invalid, ought to be reversed, and a decree entered here in accordance with the conclusions here reached.

5. That the costs be paid out of the income of the fund in the trustees' hands.

SHERWOOD, C. J., concurred with CHAMPLIN, J.