*In re* SCHEYER'S ESTATE.

APPEAL OF McCORD.

1. WILLS—CONSTRUCTION—INTENT.

    The primary consideration in the construction of a will is to determine, if possible, the intent of the maker.

2. SAME—CONSTRUCTION—INTENT.

    The primary rule for the construction of a will is to ascertain the true intention of the testator, which must be ascertained from a consideration of all its provisions in the light of the circumstances surrounding the testator at the time it was made, and his relations with the several objects of his bounty.

3. WORDS AND PHRASES—ANY.

    The meaning of the word "any," and its strictly adjective use, varies accordingly as it is used with words in the singular or plural number.

4. SAME—HOME.

    The term "home" generally connotes a place of permanence, a place to which one returns, a place where one intends to remain, a haven or domicile, a single unit or place as contrasted with several.

5. WILLS—CONSTRUCTION—ANY HOME.

    Provision of will giving testatrix's husband the life use of "any home * * * in which we are residing at the time of my death" is construed as intending that individual dwelling where the parties were permanently established and which they considered as their usual abode at the time of her death and not a summer home which the testatrix had occupied 4 or 5 months in the summer and her husband but an average of about 1 month a year for several years prior to her death.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 57 Am Jur, Wills § 1133.
[4, 5] 57 Am Jur, Wills § 1356.
[4, 5] What included in devise of "house", "dwelling house", or the like. 12 ALR 1179.
[6] 3 Am Jur, Appeal and Error § 823.

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—DISCRETION OF
    COURT—REINSTATEMENT OF APPEAL.
      Whether or not circuit court abused its discretion in rein-
        stating an appeal from the probate court after failure to
        file proof of service of notice to the adverse party as re-
        quired by statute is not determined, where will as construed
        by the probate court is approved (CL 1948, § 701.41).

Appeal from Leelanau; Brown (Charles L.), J.
Submitted April 10, 1953. (Docket No. 51, Calendar
No. 45,694.) Decided June 8, 1953.

In the matter of the estate of Marion Roberts
Scheyer, deceased. Walter Rudolph Scheyer pre-
sented his petition for construction of will. Will
construed to give one home to petitioner. He ap-
pealed to circuit court where 2 homes were given
him. James Robert McCord, Jr., and Walter
Roberts McCord appeal. Reversed.

*Marion H. Yoder,* for petitioner.

*Charles H. Menmuir,* for defendants McCord.

ADAMS, J. This is an appeal from a decision of
the circuit court of Leelanau county construing cer-
tain provisions of the last will and testament of
Marion Roberts Scheyer, deceased.

The deceased, Marion Roberts Scheyer, was
married to Walter Rudolph Scheyer in Switzerland
during the year 1930. She had 2 sons by a previous
marriage, James Robert McCord, Jr., and Walter
Roberts McCord, appellants herein. On November
3, 1933, while still in Switzerland, she executed a will.
In paragraph 5 of that will she referred to a mar-
riage settlement of October 3, 1930, executed between
herself and her husband, Walter Rudolph Scheyer,
and then said that it had been subsequently:

"Agreed between us that he shall be entitled upon my death and for the period of his lifetime and so long as he shall remain unmarried, to the use and enjoyment of any home owned by me and occupied as a home by us at the time of my death."

Following reference to the marriage settlement and the subsequent agreement, the will continued:

"I hereby give, devise and bequeath to my husband, Walter Rudolph Scheyer, for the period of his lifetime and so long as he shall remain unmarried, the use of the following properties:

"(a)  Any home belonging to me in which we are residing at the time of my death."

Some years later the Scheyers came to the United States and in 1939 Mrs. Scheyer purchased a home in Atlanta, Georgia. In 1941 she purchased a summer home on the east shore of Lake Leelanau in Leelanau county, Michigan. In 1942 the cottage was remodeled and beginning in that year Mrs. Scheyer spent her summers at Lake Leelanau through the year 1948.

Mr. Scheyer was employed in Miami in 1942 and in Puerto Rico in 1943, 1944 and 1945. In 1946 he accepted employment in Atlanta and worked there through the year 1949. Because of his employment he was unable to make more than a brief visit to the Lake Leelanau cottage in 1943 and did not spend any time there in the years 1944 or 1945. In 1946, during the interim period between his Puerta Rican employment and his later-acquired work in Atlanta, he spent 3 months in Michigan. In 1947 and 1948 he visited the cottage for brief periods not exceeding a total of 4 weeks in each year.

Late in the summer of 1948, Mrs. Scheyer became ill and in the early fall Mr. Scheyer came to Michigan and together they drove back to Atlanta. There-

after she spent several months in hospitals near Atlanta and died on July 8, 1949.

Her estate was probated in Atlanta, Georgia, with ancillary probate in Leelanau county. Mr. Scheyer occupied the home in Atlanta for some months and still has the use and benefit of the property although it is actually occupied by his tenants.

On July 3, 1950, Mr. Scheyer petitioned the probate court of Leelanau county for construction of the will of his deceased wife. In his petition he referred to that portion of the will above quoted and requested a construction of the will which would give to him the use of both the home in Atlanta, Georgia, and the cottage on Lake Leelanau during the term of his natural life or for so long as he remained unmarried. Upon hearing, the probate court determined that he was entitled only to the use of the home in Atlanta, Georgia, and from that decision an appeal was taken to the circuit court.

The circuit court reversed the decision of the probate court and found that, under the provisions of the will, the husband was entitled to the use of both the dwelling in Atlanta and the summer cottage in Michigan. From that decision the 2 sons of the deceased take this appeal.

In construing the provisions of a will, the primary consideration is to determine, if possible, the intent of the maker. Such intention may be found in the words of the instrument or from a consideration of the instrument as a whole and, on occasion, from the circumstances surrounding the execution of the will as well as the relationship of the maker to the several objects of his or her bounty.

"The primary rule of construction is to ascertain the true intention of the testator. That intention must be ascertained from a consideration of all the provisions of the will itself and in the light of the circumstances surrounding the testator at the time

the will was made and his relations with the several objects of his bounty. Having so ascertained his intention, it is the duty of the court to give that intention effect if that be legally possible." *Kirsher* v. *Todd,* 195 Mich 297, as quoted with approval in *Re Miner's Estate,* 201 Mich 115, 120.

Here the circumstances existent at the time of the execution of the will are of little assistance. At that time the testatrix lived in Switzerland and, insofar as the record discloses, was not the owner of any dwelling which might be called a home. She could not therefore have had reference to any specific property when the bequest was made. Insofar as her relationship with her 2 sons and husband is concerned, they being the natural objects of her bounty, she made reasonable bequests for the benefit of each of them and there does not appear within the provisions of the will itself any intention to prefer one over the other. The 2 sons, being minors and less able to care for their needs than the husband, were given a greater share of the property, but from that fact we gather no inference as to the extent of the property to be left to each other than as it appears in the wording of the will.

Looking then to the words to be construed, the subject matter of the bequest is described as (1) the use of (2) any home (3) belonging to me (4) in which we are residing at the time of my death. No dispute exists as between the parties over the construction or meaning of the "use" of the property or of the words "belonging to me." We are therefore concerned only with the need to determine what the testatrix meant by "any home * * * in which we are residing at the time of my death."

The word "any" has been defined in many ways and an attempt to give it a precise meaning in this instance might well do violence to the testatrix's intention. Rather, we believe it should be construed in

context with the other words used in the bequest as is suggested in the definition of the term "any" found in 3 CJS, p 1398:

"Like all other general words, the meaning of 'any' is largely controlled and often restrained and limited by the context or subject matter, for it is a word that may have one of several meanings, according to the subject which it qualifies. It has been referred to as an indefinite adjective pronoun, or pronominal adjective, used to designate objects in a general way, without pointing out any one in particular. It is not used to describe the qualities or character of objects; and usually it excludes any idea of selection or distinction, implying unlimited choice as to the particular unit, number, or quantity although it has been said also that in particular connections, the word 'any' may imply the selection of one out of several or many. Its application is at times restricted to persons or things previously enumerated, mentioned or specified; and it is not infrequently the subject of construction in the *ejusdem generis* doctrine, unless it is evident that the intention of its use will be thwarted by the application of that doctrine, or where the meaning of the language is so clear that it does not require the application of such rule of construction. In all its senses the word applies indifferently either to persons or to things; and, in its strictly adjective use, it has been given the meaning 'at all;' 'in any degree;' 'to any extent.' As indicated below, the meaning of the word varies, according as it is used with words in the singular or the plural number; for it is often used either in the singular or the plural, as a pronoun or an adjective."

The term "home" is defined in 40 CJS, p 418, as:

"A relative term, whose meaning must often necessarily depend on the intent as determined by the context; and which may be, and is, often used in different senses, as indicated in the footnote. It

has been defined as meaning domicile, see Domicile, § 1, notes 5, 6; a dwelling house, or dwelling place; a household; the house in which one lives, especially the house in which one lives with his family, the habitual abode of one's family; the place of constant or permanent residence; the place to which, when weary, one can go and rest; the place where one and his family habitually dwell, which they may leave for temporary purposes, and to which they return when the occasion for absence no longer exists; the place where one permanently resides, and to which he intends to return when away from it; residence; some permanent abode or residence where the person residing intends to remain."

In Webster's New International Dictionary (2d ed), "home" is defined as:

"One's own dwelling place; the house in which one lives; esp., the house in which one lives with his family; habitual abode of one's family; also, a dwelling house."

and by this Court as follows:

"That is a man's home which, for the time at least, he does not contemplate changing, and which he expects to retain, unless some event not then in view may make it desirable or necessary to give it up." *Welch* v. *Whelpley,* 62 Mich 15, 20 (4 Am St Rep 810).

and "residence" by this Court as follows:

"Residence means the place where one resides; an abode; a dwelling or habitation; especially, a settled or permanent home or domicile. Residence is made up of fact and intention. There must be the fact of abode, and the intention of remaining. *Estate of Heron,* 6 Phila 87, 90." *Wright* v. *Genesee Circuit Judge,* 117 Mich 244, 245.

Throughout the definitions of "home" and "residence", as herein quoted above, runs the thought of

permanence, of a place to which one returns, a place where one intends to remain, a haven or domicile. Suggested, too, is the thought of 1 unit or 1 place as contrasted with several. One cannot be permanently located in more than 1 place; one cannot be domiciled in more than 1 place; one cannot intend to remain for an extended period of time in more than 1 place. We conclude, therefore, that the testatrix in describing "any home * * * in which we are residing at the time of my death" intended to describe that individual dwelling where the parties were permanently established and which they considered their usual abode at the time of her death.

Had she meant to include the use of more than 1 dwelling in the bequest, it would have been a simple matter for her to have used the word "all" as she did in a subsequent clause of the same paragraph of the will wherein she bequeathed "any and all household furniture."

From the record it appears that the husband and wife spent between 7 and 8 months of the year together at the Atlanta home, that each year they returned to the Atlanta home when the weather became uncomfortable in Michigan, and that when Mrs. Scheyer became ill in 1948, she returned to Georgia and lived either in the home or in nearby hospitals until the time of her death. Both were registered and voted in Atlanta. They licensed their automobile in Georgia. The husband's employment was in Atlanta during the wife's last years, and in the probate of her estate her domicile was alleged to be in Georgia.

In contrast, the cottage on Lake Leelanau in Michigan was occupied by Mrs. Scheyer during 4 or 5 months of each summer from 1942 through 1948. During that same period, Mr. Scheyer spent not to exceed a total of 6 months in Michigan. While Mrs. Scheyer admittedly was fond of the summer cottage,

she returned each fall to the Atlanta home and eventually died in that city. There was no element of permanence in the occupancy of the Michigan dwelling, no thought of remaining there the year round. No extensive period of residence was had by the husband and wife as a family unit.

We conclude, therefore, that the dwelling owned by the deceased in Atlanta, Georgia, was the home in which the husband and wife resided at the time of the wife's death and that only the use of that dwelling was bequeathed to the husband, Walter Rudolph Scheyer, for the period of his lifetime and so long as he remained unmarried under the provisions of paragraph 5 of the last will and testament of the deceased.

Appellants further claim that the circuit court was in error in reinstating the appeal taken from the probate court after failure to file proof of service of notice to the adverse party as required by CL 1948, § 701.41 (Stat Ann § 27.3178[41]). Since we find the circuit court in error in the construction of the will and approve of the order of the probate court, it becomes unnecessary to determine whether there was an abuse of discretion on the part of the court in the reinstatement of the appeal.

The judgment of the circuit court is reversed and set aside. Judgment to be entered in accordance with this opinion. Costs to appellants.

DETHMERS, C. J., and BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.