940 F.2d 666
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
THREE D DEPARTMENTS, INCORPORATED, Plaintiff-Appellant,
v.
K MART CORPORATION, Defendant-Appellee.
 No. 90-2540.
 United States Court of Appeals, Seventh Circuit.
 Argued April 15, 1991.
Decided Aug. 9, 1991.
 
 Before BAUER, Chief Judge, and COFFEY and MANION, Circuit Judges.
 
 ORDER
 
 1
 K Mart owned a chain of Designer Depot stores that sold name-brand and designer clothing at discount prices. Between 1983 and 1986, K Mart opened about 90 Designer Depot stores. For some non-apparel merchandise, K Mart established "licensed departments" stocked and run by other companies. Three D Departments, Inc. was one such company; it contracted with K Mart to operate bed and bath departments in approximately 30 Designer Depot stores.
 
 
 2
 However, the Designer Depot store concept turned out to be a loser, and K Mart decided to close the entire chain. When K Mart notified Three D that its license to operate in each store was being terminated, Three D sued for breach of contract and fraud. After the initial complaint was dismissed, Three D filed an amended complaint alleging that closing all the stores breached the agreement, and that the contract's notice provisions also were breached. The district court entered summary judgment for K Mart on the notice count, but deferred its decision on the other count to permit further discovery by Three D. At the close of discovery in July 1989, both sides moved for summary judgment. The court initially denied both motions based in part on the parties' failure to comply with local rules regarding summary judgment procedures. Three D Departments, Inc. v. K Mart Corporation, 732 F.Supp. 901 (N.D.Ill.1990). After both parties amended their statements of undisputed material facts and again moved for summary judgment, the district court granted summary judgment for K Mart. Three D Departments, Inc. v. K Mart Corporation, 740 F.Supp. 528 (N.D.Ill.1990).
 
 
 3
 The contractual provision central to the district court's decision and this appeal is paragraph 1(b) of the license agreement, which reads:
 
 
 4
 In the event K Mart shall elect to close any of the store(s) covered by this license, it may do so upon at least thirty (30) days prior notice to [Three D] and the individual license for such store shall terminate on the date of closing.
 
 The district court found that
 
 5
 [s]ince ... the first clause of par. 1(b) places no limit on the numbers [sic] of Designer Depots which K Mart could close under par. 1(b), K Mart could terminate as many individual licenses as it wanted, upon thirty days notice, as long as it was closing the store which contained the licensed department.
 
 
 6
 Id., 740 F.Supp. at 529.
 
 
 7
 Three D raises several issues on appeal to challenge the district court's conclusion that K Mart acted properly under the terms of the contract. None of Three D's contentions has merit.
 
 
 8
 First, Three D argues that paragraph 1(b) is ambiguous, and as such should be construed against K Mart, its drafter. This argument fails because paragraph 1(b) is not ambiguous.
 
 
 9
 Under Michigan law, which is the governing law under the agreement, language in a written contract is ambiguous when it "is subject to two or more reasonable interpretations or is inconsistent on its face...." Petovello v. Murray, 362 N.W.2d 857, 858 (Mich.App.1984). Three D argues that its interpretation of the provision--that it authorized "K Mart from time to time to close an individual store in the regular course of business, but not to authorize closure of all stores"--is as reasonable as K Mart's interpretation, and that the paragraph therefore is susceptible to more than one reasonable interpretation. Three D also argues that some Michigan cases construing the word "any" in a contract have concluded the word is ambiguous, and that because "any" can mean different things it is ambiguous. We disagree both with Three D's interpretation of the provision, and its interpretation of relevant Michigan cases.
 
 
 10
 Three D's interpretation of paragraph 1(b)'s meaning suffers from one simple defect--it refuses to recognize that the provision gives K Mart the discretion to close "any ... store(s)" it wishes. Although "any" can mean different things, like one, some or all, that does not render the provision ambiguous; it merely means that K Mart has discretion to close one, some or all of its stores. The Michigan case on which Three D relies, In re Scheyer's Estate, 59 N.W.2d 33 (Mich.1953), is not to the contrary. In that case, the term "any" appears in a will and is limited by its context: "Any home belonging to me in which we are residing at the time of my death." Because a person can only reside in one home at the time of death, the court held that "any" was limited by context to one home, rather than all the homes in the estate. 59 N.W.2d at 36-37. Moreover, numerous Michigan cases hold that "any" means more than one and a number up to and including "all" or "every." See e.g. Congregation B'nai Jacob v. City of Oak Park, 302 N.W.2d 296, 297 (1981); Gibson v. Agricultural Life Ins. Co., 276 N.W. 450, 452 (1937); Harrington v. Interstate Business Men's Acc. Ass'n, 178 N.W. 19, 20 (1920); Attorney General ex rel. Danhof v. Renihan, 151 N.W. 324, 325 (1915); Hopkins v. Sanders, 137 N.W. 709, 713 (1912).
 
 
 11
 Three D also argues that the district court's construction of paragraph 1(b) is inconsistent with other provisions in the contract which allow for termination of any or all of the stores for specified causes. This is not so. First, paragraph 1(a) sets the basic term of the agreement "for each store" at four years, "unless terminated earlier in accordance with (b) through (f) below." Thus, paragraph 1(b) applies to "each store." Second, paragraphs 1(c)-1(f) provide for termination under different circumstances and terms than paragraph 1(b). The district court correctly summarized the distinctions that keep paragraph 1(b)'s termination provisions from being superfluous:
 
 
 12
 Paragraph 1(c) provided that when the lease for a Designer Depot terminated or expired, Three D's license terminated at the same time. In this event, K Mart's duty to give prior notice was only "where possible." Paragraph 1(d) provided for termination of the license at the option of the parties at a store in the event that the store was condemned; exercise of the option would force Three D to vacate such store immediately. Paragraphs 1(e)-(f) provided for termination of licenses in the event of Three D's bankruptcy and/or failure to perform under the license, events unrelated to the operation of K Mart's stores.
 
 
 13
 740 F.Supp. at 529.
 
 
 14
 No other ambiguity challenge to the provision's meaning merits discussion. We agree with the district court that paragraph 1(b) unambiguously allows K Mart to close every store, as it did in this case. The paragraph simply does not place any limits on K Mart's discretion to close stores (other than the 30-day notice requirement). As the Michigan Supreme Court put it in Gibson, supra, use of the word "any" in a contract "negatives the idea of exclusion ...". 276 N.W. at 452. Adopting Three D's position would force us to conclude that "any" does not mean "any," but that at least one store was immune from closure. The plain terms of the contract do not allow that interpretation. Because the contract is unambiguous, we need not be concerned about construing the agreement against its drafter.
 
 
 15
 Three D raises three issues in the alternative, assuming we find (as we did) that the agreement is unambiguous. First, Three D argues that the contract is "unconscionable" because: K Mart is much larger than Three D; the cancellation left Three D in a difficult spot; and contracts that allow one side to terminate without cause are unconscionable under Michigan law. This argument borders on the frivolous. To be invalidated under the unconscionability doctrine, a contract must be both "procedurally" and "substantively" unconscionable. St. Paul Fire & Marine Ins. Co. v. Guardian Alarm Co., 320 N.W.2d 244, 247 (1982); DeValk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326, 332-33 (7th Cir.1987). At the time the contract was signed, Three D was a publicly traded corporation with more than $50 million in annual sales from 28 free-standing stores and 53 licensed departments in four national chains. The contract was negotiated over a six-month period by Three D's president, Donald Abrams, a lawyer with experience negotiating other similar agreements with retailers. Abrams had Three D's staff counsel and three outside attorneys read the agreement and pronounce it fair before he signed it. Abrams negotiated a number of changes from the contract originally submitted by K Mart that benefitted Three D. Thus, there was no procedural unconscionability in the negotiations leading to this contract. Nor is there substantive unconscionability, which "will rarely be found" in business contracts like this one "because in the commercial setting the relationship is between business parties and is not so one-sided as to give one party the bargaining power to impose unconscionable terms on the other party." Martin v. Joseph Harris Co., Inc., 767 F.2d 296, 299-300 (6th Cir.1985). Three D's reliance on Gianni Sport Ltd. v. Gantos, Inc., 391 N.W.2d 760 (1986), is misplaced, because Gianni specifically distinguishes its case from contracts like ours where "experienced businessmen" knowingly accept risks.
 
 
 16
 Second, Three D contends that even where a contractual provision is unambiguous, parol evidence to the contrary creates a latent ambiguity in the contract so that summary judgment is inappropriate. While the purported "parol evidence" Three D presents does not persuade us of any contrary meaning intended by the parties, we need not discuss it because parol evidence is irrelevant where a contract is unambiguous and contains an integration clause, as this one does, confirming that the written agreement is the "entire agreement between the parties" and cannot be modified except in writing. DeVries v. Brydges, 225 N.W.2d 195, 198 (1974).
 
 
 17
 Finally, Three D claims the district court erred by refusing to allow it to file a second amended complaint adding new counts for fraudulent conduct and bad faith based on "newly produced evidence" at the close of discovery. However, these "new" claims were based on evidence that Magistrate Balog concluded was not really new, and was not intentionally kept from Three D by K Mart. The matter was fully briefed for the district court. We have reviewed the record and conclude the district court's decision to deny Three D's motion to amend was not an abuse of discretion because the claims were not based on any new evidence, were mere reiterations of previously dismissed claims, and were not supported by the evidence. Allowing an amendment at that late stage would have unduly prejudiced K Mart, and in any event the counts added in the amended complaint would have proven futile. See Foman v. Davis, 371 U.S. 178, 182 (1962).
 
 
 18
 AFFIRMED.