**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED APRIL 2, 2009

In re Estate of ALICE J. RAYMOND, Deceased.

_____

CLAIR MORSE,

      Petitioner-Appellee,

v                                No. 134461

VALERIE SHARKEY, GAIL THOMAS, GARY
ZIEGLER, DEANNA CONANT, CARYN NUZHET,
JAY CURRY, MARY JEAN MANDELA, JOHN
PACKARD, FRANK PACKARD, LISA MORSE,
ELLIOTT GUILLORY, ROBERT McCLELLAND,
BEVERLY CLEMENT, DAVID MORSE, JUDITH
FROELICK, PHILLIP MORSE, JOAN SUMMERS,
JANICE FALKEY, DONALD MORSE, MARVIN
STULL, ERIC STULL, FRANK BRIGGS, JOANNE
CARTER, and MARILYN RIGEL,

      Respondents-Appellants.

_____

BEFORE THE ENTIRE BENCH (except HATHAWAY, J.)

PER CURIAM.

In this case, we are called upon to discern the group of individuals who may take under the residuary clause of the testator's will. Petitioner maintains that the residuary clause includes only the surviving siblings of the testator and her late husband, to the exclusion of the surviving heirs of predeceased siblings. In lieu of

granting leave to appeal, we would affirm the judgment of the Court of Appeals and hold that the probate court correctly construed the will in petitioner's favor. The class, "brothers and sisters," was unambiguously qualified and limited by the phrase "that survive me." This qualification clearly indicated the testator's intent to exclude her predeceased siblings and their heirs from the class of devisees.

Facts and Procedural History

On January 15, 1979, testator Alice Raymond and her husband Claude Raymond executed mirror-image wills, both leaving their estates to one another upon death.[1] Claude Raymond predeceased the testator in February 2000, and Alice Raymond died at the age of 88 in February 2005. Because the testator's spouse was already deceased, the residuary clause of the will came into effect. It provided that the remainder of the estate would be divided as follows:

> A. Fifty (50%) per cent thereof to my brother[s] and sisters that survive me share and share alike or to the survivor or survivors thereof.

> B. Fifty (50%) per cent thereof to the brothers and sisters of my husband that survive me, share and share alike or to the survivor or survivors thereof.

The testator had eight siblings, but at the time of her death, only two of her siblings were alive. Likewise, the testator's spouse had eight siblings, but only three of her deceased husband's siblings were alive at the time of the testator's

---

[1] Each will provided that any debts, taxes, funeral costs, or administrative expenses would be paid out of the estate first.

death. The petitioner in this case is one of the testator's surviving brothers. The respondents are some of the children and grandchildren of the deceased siblings of Alice and Claude Raymond.

In June 2005, petitioner filed a petition for probate followed by a petition to construe the will. Petitioner argued that only the surviving siblings of the testator and her husband could take under the clear terms of the will. Respondent maintained that the will provided for "the survivor or survivors" of the deceased siblings of Alice and Claude Raymond. Following a hearing, the probate judge agreed with petitioner and denied respondents a share of the estate, reasoning:

> I think in reading the clause one has to look at the first phrase, "Fifty per cent thereof to my brothers and sisters that survive me," then there is a coma [sic]. It would appear to this court that the group Ms. Raymond was dealing with were to [sic] her brothers and sisters. Then she qualified that group by "those who survive me." The remaining clause, in this court's eyes, would be descriptive of the earlier group, the earlier group being "my brothers and sisters that survive me." The remaining phrase, "to share and share alike or to the survivors thereof" would mean to my brothers and sisters, those who predecease me, to those that are left, to share and share alike and to the survivors thereof.

The Court of Appeals affirmed. The majority held that, under the plain language of the will, only the testator's surviving siblings and siblings-in-law could receive a share of the estate, and that the will granted nothing to the descendants of predeceased siblings. Because the testator limited the class of "brothers and sisters" to those who survived the testator, this indicated the testator's intent to exclude any predeceased siblings from the class of devisees.

3

The Court of Appeals majority further held that the phrase "share and share alike" evinced the intent to bestow a per capita distribution among the surviving siblings. The Court of Appeals majority reasoned that the second clause of the bequest—"or to the survivor or survivors thereof"—modified "my brother[s] and sisters that survive me," confining membership to testator's surviving siblings.[2]

The dissenting judge believed that the plain language of the provision indicated that the estate should be shared by both the surviving siblings *and* the heirs of the deceased siblings. The dissent believed that the majority's interpretation was illogical and redundant, and that the phrase "survivors thereof" must refer to someone *other than* the surviving siblings. Specifically, the dissenting judge believed that the phrase must refer to the descendants of the predeceased siblings.[3]

The respondents appealed in this Court. We heard oral argument on the application for leave to appeal, and now we would affirm the judgment of the Court of Appeals.

Analysis

"The primary goal of the Court in construing a will is to effectuate, to the extent consistent with the law, the intent of the testator."[4] To accomplish this, a

---

[2] *In re Raymond Estate*, 276 Mich App 22; 739 NW2d 899 (2007).

[3] *Id*. at 35-41 (Murphy, J., dissenting).

[4] *In re Edgar Estate*, 425 Mich 364, 378; 389 NW2d 696 (1986). See also *Hay v Hay*, 317 Mich 370, 397; 26 NW2d 908 (1947), *Dodge v Detroit Trust Co*,

court gives effect to the drafter's intent as indicated in the plain language of the will.[5] The will must be read as a whole and harmonized, if possible, with the intent expressed in the document. If there is no ambiguity, the Court is to enforce the will as written.[6] However, if the intent of the testator cannot be gleaned solely by reference to the will because there is an ambiguity, the Court may discern the intent of the testator through extrinsic sources.[7] Additionally, while the probate court's factual findings are subject to review for clear error,[8] a probate court's construction of a will is a question of law subject to de novo review.[9]

The substantive portions of the testamentary provisions are identical, providing for "[f]ifty (50%) per cent thereof to the brothers and sisters that survive me, share and share alike or to the survivor or survivors thereof." We agree with the probate court's ruling in this case that the identified group who may take under the terms of the residuary clause is comprised of the brothers and sisters of Alice and Claude Raymond. However, that group does not include all siblings, but is limited by the phrase "that survive me." Thus, the inclusion of this express

---

300 Mich 575, 598; 2 NW2d 509 (1942), and *In re Churchill's Estate*, 230 Mich 148, 155; 203 NW 118 (1925).

[5] *In re Jamieson Estate*, 374 Mich 231; 132 NW2d 1 (1965).

[6] *In re Butterfield Estate*, 405 Mich 702; 275 NW2d 262 (1979); *In re Lowrie's Estate*, 294 Mich 298; 293 NW 656 (1940).

[7] *Id.*

[8] *In re Wojan Estate*, 126 Mich App 50; 337 NW2d 308 (1983); *In re Burruss Estate*, 152 Mich App 660, 663-664; 394 NW2d 466 (1986).

[9] *In re Bem Estate*, 247 Mich App 427, 434; 637 NW2d 506 (2001).

limitation necessarily precludes those siblings who predeceased Alice Raymond from taking a portion of the testator's estate under the residuary clause.

We further agree with the probate court that the remaining clause "or to the survivor or survivors thereof" necessarily references the group described earlier in the disjunctive phrase—the surviving brothers and sisters. This is consistent with *In re Holtforth's Estate*, 298 Mich 708; 299 NW 776 (1941); and *In re Burruss Estate*, 152 Mich App 660; 394 NW2d 466 (1986). As Justice Cooley noted in *Eberts v Eberts*, 42 Mich 404, 407; 4 NW 172 (1880), when a will "only makes the gift to persons who survived the testat[or] *there is nothing to go to the issue of others who died before* []*he did*." (Emphasis added.)[10]

While the testamentary phrase was imperfectly worded, any other construction, such as that advanced by the Court of Appeals dissent, would permit

_____

[10] Although "words of survivorship . . . are not, in the absence of additional evidence, a sufficient indication of an intent contrary to the application" of the antilapse statute, MCL 700.2603(1)(c), we agree with the Court of Appeals majority that

> the language of the residuary clause taken as a whole—specially taking into account the use of the three separate statements: "that survive me," "share and share alike," and "the survivor or survivors thereof"—expresses an intent to make a provision for the death of the beneficiaries in a manner contrary to that provided for in the antilapse statute." [*In re Raymond Estate*, *supra* at 35, citing *In re Burruss Estate*, *supra* at 663, 665; *In re Holtforth's Estate*, *supra* at 710-711).]

a gift to the predeceased siblings of the testator, a group that was specifically excluded by the plain language of the will.

    We would affirm.

                        Marilyn Kelly
                        Maura D. Corrigan
                        Robert P. Young, Jr.

STATE OF MICHIGAN

SUPREME COURT

In re Estate of ALICE J. RAYMOND,
Deceased.

_____

CLAIR MORSE,

        Petitioner-Appellee,

v                                      No. 134461

VALERIE SHARKEY, GAIL THOMAS,
GARY ZIEGLER, DEANNA CONANT,
CARYN NUZHET, JAY CURRY, MARY
JEAN MANDELA, JOHN PACKARD,
FRANK PACKARD, LISA MORSE,
ELLIOTT GUILLORY, ROBERT
McCLELLAND, BEVERLY CLEMENT,
DAVID MORSE, JUDITH FROELICK,
PHILLIP MORSE, JOAN SUMMERS,
JANICE FALKEY, DONALD MORSE,
MARVIN STULL, ERIC STULL, FRANK
BRIGGS, JOANNE CARTER, and
MARILYN RIGEL,

        Respondents-Appellants.

_____

WEAVER, J. (*concurring in the result only*).

Leave to appeal was not granted in this case. Rather, oral argument on respondents' application for this Court to grant leave to appeal was heard in this case in order to determine whether this Court should grant leave to appeal, deny leave to appeal, or take other peremptory action. Having heard oral argument, I would deny leave to appeal because I am not persuaded that this Court should take

any further action in this unique, fact-specific case that should have no precedential value.

Elizabeth A. Weaver

S T A T E   O F   M I C H I G A N

SUPREME COURT

In re Estate of ALICE J. RAYMOND,
Deceased.

_____

CLAIR MORSE,

       Petitioner-Appellee,

v                                                                                    No. 134461

VALERIE SHARKEY, GAIL THOMAS,
GARY ZEIGLER, DEANNA CONANT,
CARYN NUZHET, JAY CURRY, MARY
JEAN MANDELA, JOHN PACKARD,
FRANK PACKARD, LISA MORSE,
ELLIOTT GUILLORY, ROBERT
McCLELLAND, BEVERLY CLEMENT,
DAVID MORSE, JUDITH FROELICK,
PHILLIP MORSE, JOAN SUMMERS,
JANICE FALKEY, DONALD MORSE,
MARVIN STULL, ERIC STULL, FRANK
BRIGGS, JOANNE CARTER, and
MARILYN RIGEL,

       Respondents-Appellants.

_____

MARKMAN, J. (*dissenting*).

      Before this Court is the interpretation of a will.  Because I believe that the

will in dispute commands an interpretation different from that accorded by the

plurality, I respectfully dissent.

## I. Facts and Procedural History

On January 15, 1979, Alice Raymond ("testator") executed the instant will. It first directs that all administrative and funeral costs and taxes related to testator's death be paid out of her estate, and then gives the "rest, residue and remainder of [testator's] property and estate" ("residuary estate") to her husband, Claude Raymond ("Claude"). The will provides, however, that if Claude predeceases testator (or if Claude and testator die simultaneously), the residuary estate should be divided pursuant to paragraphs A and B.[1] Paragraphs A and B allocate testator's residuary estate as follows:

> A. Fifty (50%) per cent thereof to my brother[s] and sisters that survive me share and share alike or to the survivor or survivors thereof.[2]
>
> B. Fifty (50%) per cent thereof to the brothers and sisters of my husband that survive me, share and share alike or to the survivor or survivors thereof.

When testator died on February 27, 2005, Claude had predeceased her, thereby triggering the will's distribution under paragraphs A and B. At the time of

---

[1] Claude and testator executed mirror-image wills at the same time. Each spouse's will left his or her estate to the other spouse, and then set forth the distribution to take effect pursuant to paragraphs A and B if the other spouse had already died.

[2] Although paragraph A states "to my brother and sisters," the probate court read the phrase as "to my brother[s] and sisters" without objection by either party. Accordingly, I adopt the probate court's reading of this paragraph.

testator's death, two of her brothers were alive, and Claude's two brothers and one of his sisters were alive.[3]

Petitioner, one of testator's brothers, argued before the probate court that paragraphs A and B should be construed to allow only testator's and Claude's brothers and sisters who survived testator to receive under the will with "no share [going] to the surviving descendants of predeceased brothers and/or sisters" of either testator or Claude. Petitioner further asked the court to find that the antilapse statute, MCL 700.2603, did not apply on the basis of the alternative devise created by the language "or to the survivor or survivors thereof."

Respondents, children and grandchildren of testator's and Claude's predeceased siblings,[4] objected to the petition and argued that the will should be construed to allow the "descendants of a deceased devisee" to "take their deceased ancestor's share by representation."[5] Respondents alternatively argued that the shares testator's predeceased siblings would have recovered had they survived testator should be distributed to the descendants of those predeceased siblings pursuant to the antilapse statute.

_____

[3] Testator had five brothers, three of whom predeceased her, and three sisters, all of whom predeceased her. Claude had two brothers, who both survived testator, and six sisters, five of whom predeceased testator.

[4] "Predeceased siblings" refers to either testator's or Claude's siblings who passed away before *testator* died.

[5] Representation is a means by which the closest descendant (or descendants) of a deceased devisee take the share to which the deceased devisee is entitled.

3

On December 7, 2005, the probate court ordered that testator's two surviving brothers should take 50 percent of the residuary estate and that Claude's two brothers and one sister who all survived testator should take the other 50 percent of the residuary estate. The descendants of testator's and Claude's predeceased siblings were "not entitled to any share in the residue."

Respondents appealed in the Court of Appeals, which affirmed the probate court's order in a split decision. The Court of Appeals concluded that the phrase "brother[s] and sisters that survive me" and the phrase "to the survivor or survivors thereof" both designated the brothers and sisters who outlived testator. *In re Raymond Estate*, 276 Mich App 22, 32-33; 739 NW2d 889 (2007). Accordingly, testator's and Claude's siblings who survived testator were entitled to a distribution under paragraphs A and B, and descendants of predeceased siblings were entitled to nothing. The dissenting judge noted that interpreting "survivor or survivors thereof" to designate siblings who survived testator was "redundant" and instead interpreted this phrase to designate survivors of testator's and Claude's siblings who predeceased testator. Thus, the "estate would be shared by surviving siblings and the surviving descendants of the siblings who had predeceased the testator." *In re Raymond Estate*, 276 Mich App at 40 (Murphy, J., dissenting).

Respondents sought leave to appeal in this Court. We granted oral argument on respondents' application for leave to appeal, *In re Raymond Estate*, 480 Mich 1194 (2008), which we heard on October 22, 2008, at Saginaw Valley

4

State University. A plurality now affirms the interpretation of the Court of Appeals majority. In my judgment, however, the interpretation and analysis set forth by the Court of Appeals dissent are correct.

## II. Standard of Review

By interpreting a will, this Court gives legal meaning to the words within the will. Accordingly, we review a probate court's interpretation of a will de novo.[6] *In re Bem Estate*, 247 Mich App 427, 433; 637 NW2d 506 (2001); see also *Oakland Co Bd of Co Rd Comm'rs v Michigan Prop & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998) (holding that questions of law are reviewed de novo).

## III. Will Interpretation

Our cases are longstanding and uniform in pronouncing that the Court's responsibility in interpreting a will is to enforce the testator's intent. See, e.g., *Palms v Palms*, 68 Mich 355, 378; 36 NW 419 (1888) ("In construing wills, it is well settled that the intent of the testator must be ascertained and carried into effect so far as it legally can be done."); *In re Scheyer's Estate*, 336 Mich 645, 648; 59 NW2d 33 (1953) ("[T]he primary consideration is to determine, if possible, the intent of the maker."); *In re Churchill's Estate*, 230 Mich 148, 155; 203 NW 118 (1925) ("In the construction of wills the cardinal canon, the guiding

---

[6] A probate court's factual findings regarding a will, however, are given deference and reversed only for clear error. *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003).

5

polar star, is that the intent of the testator must govern . . . .").  This responsibility is a function of a testator's right to freely dispose of property belonging to the testator as he or she sees fit.  *In re Sprenger's Estate*, 337 Mich 514, 521-522; 60 NW2d 436 (1953).[7]

The execution of a will constitutes the point at which the testator is presumed to have formed an intent regarding the distribution of his or her property.  *Morrow v Detroit Trust Co*, 330 Mich 635, 642; 48 NW2d 136 (1951).  Thus, the language of the will constitutes the best source from which the testator's intent can be determined.  *Kinney v Kinney*, 34 Mich 250, 252-253 (1876); *In re Kremlick Estate*, 417 Mich 237, 240; 331 NW2d 228 (1983).  The will should be read as a whole, *In re Chapple's Estate*, 338 Mich 246, 253; 61 NW2d 37 (1953); *In re Brown's Estate*, 324 Mich 264, 267; 36 NW2d 912 (1949), and all words used by the testator should be given effect.  *Id.*  "The words are to be given their primary and natural significance unless the context makes it clear that they were employed in a different sense."  *In re Bruin Estate*, 370 Mich 34, 40; 120 NW2d 752 (1963) (citation and quotation marks omitted).  "Having so ascertained [the testator's] intention, it is the duty of the court to give that intention effect if that be legally possible."  *In re Schreyer's Estate*, 336 Mich at 649.

---

[7] The will is vital to determining the distribution that the testator intended because the testator, of course, "is not available to provide additional facts or insight."  *In re Kremlick Estate*, 417 Mich 237, 240; 331 NW2d 228 (1983).

IV. Analysis

A. Division of Residuary Estate

Paragraph SECOND of the will states in relevant part:

> [I]n the event my said husband should predecease me or should my said husband and I die in a common disaster making it impossible to determine the order of our deaths, then and in such event all of the aforesaid rest, residue and remainder of my estate shall be divided in manner following: [Paragraphs A and B].

Thus, the will directs that if Claude dies before testator, as was the case here, "all" of testator's residuary estate "shall" be divided according to paragraphs A and B. The straightforward language "all" and "shall" expresses the testator's clear direction that the whole residuary estate be distributed as provided in paragraphs A and B.

B. Paragraph A

Paragraph A states:

> A. Fifty (50%) per cent thereof to my brother[s] and sisters that survive me share and share alike or to the survivor or survivors thereof.

I have separated paragraph A into two clauses for purposes of interpretation, the first reading "Fifty (50%) per cent thereof to my brother[s] and sisters that survive me share and share alike," and the second reading "or to the survivor or survivors thereof." I disagree with the plurality that testator intended *both* clauses to refer to "the surviving brothers and sisters." *Ante* at 5-6.

7

## 1. First Clause

The will states that the *residuary estate* "shall be divided" in the manner described in paragraphs A and B, and the language directly preceding these paragraphs states that "all of the aforesaid rest, residue and remainder of my estate shall be divided in manner following." Thus, when paragraph A's first clause begins with "Fifty (50%) per cent thereof," the object to which "thereof" refers must be the residuary estate.

"[T]o my brother[s] and sisters that survive me" defines the class of recipients to which the 50 percent portion must be distributed.[8] In order to "survive," one must "remain alive, as after the death of another or the occurrence of some event." *Random House Webster's College Dictionary* (2001). The will provides that the sibling must survive "me," identifying testator as the one her sibling must outlive to qualify for the class. Thus, the class entitled to recover under the first clause is interpreted to consist of testator's two brothers who were living at the time of her death.

The final phrase in the first clause, "share and share alike," identifies the manner by which the 50 percent portion should be divided. "A direction for the division of certain specified property between the members of a group, 'share and share alike,' is construed as a direction to distribute *per capita*." *Van Gallow v*

---

[8] *Random House Webster's College Dictionary* (2001) explains that the use of "that" in this manner usually introduces a restrictive clause that is "essential to the complete meaning of the sentence."

*Brandt*, 168 Mich 642, 650; 134 NW 1018 (1912) (citation and quotation marks omitted). A distribution "per capita" is a division of the estate "according to the number of individuals . . . by which an equal share is given to each of a number of persons, all of whom stand in equal degree to the decedent." *Black's Law Dictionary* (5th ed). In the instant case, "share and share alike" provides that the 50 percent portion under paragraph A should be divided into equal shares among individuals who are equally within the class defined by paragraph A.

### 2. Second Clause

Paragraph A's second clause includes the phrase "to the survivor or survivors thereof," which is analogous to the phrase "to my brother[s] and sisters that survive me" in that both phrases begin with the word "to" and then conclude with language identifying a class of persons. This analogous formulation indicates that the class identified in the second clause, like the class defined in the first clause, should be understood as a class entitled to recover under the will.

"[S]urvivor or survivors thereof" again defines a class of persons who outlive another individual. In this context, unlike with regard to the earlier reference in the paragraph to brothers and sisters who "survive *me*," the death that one must outlive to be a "survivor" is the death of a predeceased sibling. Upon testator's death, two events were possible with respect to each one of testator's siblings. One event was that the sibling was still alive. The sibling would then be entitled to recover as one of the "brother[s] [or] sisters that survived [testator]." The second event is that the sibling had predeceased testator, which would mean

9

that the sibling's descendants still living would be "survivors" of that sibling because they had outlived the sibling.

This interpretation of "survivor or survivors thereof" is supported by testator's use of the word "or" to separate the two clauses in paragraph A. This term communicates an intent to set forth *alternative* classes of beneficiaries in these clauses. The classes defined in these clauses, therefore, must be distinct, rather than redundant, in order that testator's will be given effect. The instant interpretation of "survivor or survivors thereof" achieves this with the first class comprised of brothers and sisters who survive testator and the second class comprised of descendants of brothers and sisters who did not survive testator.

### 3. First and Second Clauses Together

When the first and second clauses are read together, paragraph A entitles a sibling who survived testator to recover a share of the estate and creates a substitute devise for any sibling who did not survive testator, to which the survivor or survivors of the predeceased sibling are entitled. The devise created for both a surviving sibling and a predeceased sibling's survivors must be allocated from within the 50 percent portion distributed under paragraph A. This allocation is defined by the phrase "share and share alike," which, as explained earlier, divides the estate among a group of people who stand as part of a similar class. Dividing the 50 percent portion by the total number of testator's siblings (who are in equal relation to testator and in the class preceding) creates eight equal shares. The two brothers who survived testator are each entitled to their own share. The surviving

descendants of each predeceased sibling take the share that would have gone to the predeceased sibling had he or she survived testator.

The share for each group of surviving descendants is disbursed according to inheritance, because testator's will provides no guidance for how the "survivor or survivors" should receive the share. See *In re Horrie Estate*, 365 Mich 448, 453-454; 113 NW2d 793 (1962). Under Michigan's inheritance scheme, the predeceased sibling's descendants take by representation.[9] MCL 700.2103(a). MCL 700.2106(1) provides the framework by which the predeceased sibling's share should be divided among the sibling's descendants by representation:

> [T]he estate or part of the estate is divided into as many equal shares as the total of the surviving descendants in the generation nearest to the decedent that contains 1 or more surviving descendants and the deceased descendants in the same generation who left surviving descendants, if any. Each surviving descendant in the nearest generation is allocated 1 share. The remaining shares, if any, are combined and then divided in the same manner among the surviving descendants of the deceased descendants as if the surviving descendants who were allocated a share and their surviving descendants had predeceased the decedent.

Accordingly, the predeceased sibling's share is further divided into shares based on the sibling's number of children, assuming at least one child is still alive.[10] The

---

[9] Typically, a predeceased sibling's spouse would be entitled to take a portion of the sibling's share pursuant to MCL 700.2102. There is no indication here, however, that any predeceased sibling's spouse was still alive at the time that testator died. MCL 700.2103(a) directs that the whole share should go to the sibling's descendants by representation "if there is no surviving spouse."

[10] If none of the sibling's children is alive, then the sibling's share is divided among the sibling's grandchildren.

11

children who survived the sibling are each entitled to one share. For the children who predeceased the sibling, their shares are combined and divided in the same manner among the predeceased children's surviving descendants (the predeceased sibling's grandchildren). The descendants of the surviving children are not included in this division, nor are they entitled to any share.

The potential for survivors to be entitled to distribution by representation explains testator's placement of "share and share alike" *after* the class defined in the first clause, "brother[s] and sisters that survive me." Had testator placed "share and share alike" after the second clause, "survivor or survivors thereof," the specified division would have been more reasonably interpreted as being among testator's siblings *and* testator's predeceased siblings' descendants. Because the predeceased sibling's descendants, who are substitute beneficiaries for the predeceased siblings, could include the living children and grandchildren of any predeceased sibling, to include those descendants in calculating the initial division of the 50 percent portion of the estate would possibly create a division of shares among a large number of people. Such a division would diminish the property to which each living sibling would be entitled, apparently arbitrarily and quite possibly in a manner not intended by testator, and allow persons standing in different degrees of relation to testator to recover an equivalent amount. This result is avoided by testator's placement of "share and share alike" after the first clause, where it is reasonably interpreted to apply to a division among the preceding class.

12

The interpretation set forth above, contrary to the plurality's assertion, would not "permit a gift to the predeceased siblings of the testator, a group that was specifically excluded by the plain language of the will." *Ante* at 6-7. Rather, it recognizes that the first clause excludes a predeceased sibling and that such exclusion creates a potential void for the share allocated to that sibling. However, the second clause fills that void by providing an alternative beneficiary. This alternative distribution does not "permit a gift to the predeceased sibling" but allows the descendants of the predeceased sibling to recover under the will. That is, each of testator's siblings is allocated a share of 50 percent of the estate under paragraph A. If the sibling was alive at the time of testator's death, then that sibling takes his or her respective share. If the sibling has predeceased testator, then the share allocated for that sibling, rather than going to the sibling, goes to the sibling's descendants.

## C. Paragraph B

The identity of language between paragraphs A and B reflects testator's intent that the distribution through one paragraph be similar to the distribution through the other. By expressing her intent to distribute a portion of the estate in a particular way in paragraph A, testator seemingly intended to match that distribution for the other portion of the estate by reciting the same language in paragraph B. Additionally, because of this identity, paragraph B is subject to the same interpretation as A, with the only difference being that paragraph B pertains to Claude's, rather than testator's, siblings. Interpreting paragraph B in the same

13

manner identified above for paragraph A creates the following distribution under paragraph B: a 50 percent portion of the estate should be divided into eight equal shares; Claude's two brothers and one sister who were still living at the time of testator's death should each receive one of the shares; and the remaining five shares should go to the respective descendants of each of the five siblings who predeceased testator. Within each group of descendants, the share should be divided by representation as outlined in MCL 700.2106(1).

## D. Paragraphs A and B Together

The will directs that the whole residuary estate be distributed solely through paragraphs A and B. The whole residuary estate is divided 50-50 between paragraph A and paragraph B. Under paragraph A, 50 percent of the total residuary estate should be divided into equal shares based on testator's number of siblings. Each brother and sister who survived testator should receive his or her respective share. Each share allocated to a brother or sister who predeceased testator should in turn be distributed according to MCL 700.2106(1). Paragraph B distributes the other 50 percent of the whole estate in a similar manner by dividing it into equal shares based on Claude's number of siblings. Each of Claude's siblings who survived testator should receive his or her respective share. Each share allocated to a sibling of Claude's who predeceased testator should go to the surviving descendants of that sibling pursuant to MCL 700.2106(1).

The distribution under paragraphs A and B completely disposes of testator's property and does not leave any remaining portion of the estate

14

undistributed. Every share under both paragraphs goes to either a sibling or the descendants of a predeceased sibling. Even if all of testator's siblings or all of Claude's siblings had predeceased testator, the 50 percent portions would still have been distributed strictly through paragraphs A and B as long as at least one survivor existed.[11]

Under similar reasoning, this interpretation also, importantly, maintains an equal division of the whole estate between testator's family and Claude's family. The importance of this division is reflected in the execution by testator and Claude of mirror-image wills, which evidences an obvious understanding between testator and Claude that, without regard to which among them died first, once both had died, their combined estates would be divided *equally* between their families. By taking measures to implement an equal division under any circumstances, testator demonstrated the importance she placed on having each family receive an equal portion.[12] After the whole estate is divided 50-50 between testator's and Claude's families, each portion remains in the respective family because the existence of the substitute beneficiaries ensures that the 50 percent devise does not lapse.

---

[11] If a predeceased sibling had no survivors, then the devise of that share fails and the share is divided among the siblings who survived testator and the siblings who did not survive testator for whom substitute beneficiaries existed.

[12] Because paragraphs A and B each distributes an equal percentage (50) of the whole estate to the respective families, the property received by testator's family will equal the property received by Claude's family.

## V. Plurality Interpretation

The plurality's interpretation, in my judgment, fails to give testator's language full effect. In particular, it interprets the class in the first clause to consist of the same individuals who make up the class in the second clause. That is, the siblings who outlive testator are both "brother[s] and sisters that survive [testator]" *and* "the . . . survivors thereof." This interpretation forces the strained reading that testator intended to give her estate to the siblings who survived her "or" to the siblings still alive when she died. I respectfully disagree with this interpretation because rather than giving meaning to testator's use of the word "or" to indicate alternative classes in the first and second clauses of paragraph A, the plurality essentially construes two distinct phrases ("my brother[s] and sisters that survive me" and "the survivor or survivors thereof") to designate the exact same class. The only individuals who qualify to be included in the first class are siblings who were still living at the time of testator's death. If a sibling was still living at the time of testator's death, the sibling will *always* be a "survivor," because the only way by which a sibling cannot be a survivor is if he or she predeceased testator. The sibling's death would also mean that the sibling did not "survive [testator]." Thus, under this interpretation, a sibling alive after testator's death will *always* be in the first and second groups, and a predeceased sibling will *never* be in either of the groups. This interpretation, therefore, creates the same class with the different language in each clause, even though testator clearly

16

intended for the second clause to provide alternative beneficiaries for the first clause through her use of the word "or."

I further disagree with the method of analysis by which the plurality reaches its conclusion. In particular, it relies on the results from *In re Burruss Estate*, 152 Mich App 660; 394 NW2d 466 (1986), and *In re Holtforth's Estate*, 298 Mich 708; 299 NW 776 (1941), *ante* at 6, even though, as the Court of Appeals acknowledged, the wills in those cases are not "exact match[es]" to the instant will. *In re Raymond Estate*, 276 Mich App at 32. The variances among the wills, however, are highly significant, and because *Burruss* and *Holtforth* can be easily distinguished on these grounds, I believe reliance on those cases is an inappropriate substitute for giving full effect to the instant will's language.[13]

---

[13] The testator in *Burruss* devised her estate

> in equal amounts, share and share alike, to [her] daughters, Anna Mary Vollick of Redford Township, Wayne County, Michigan, Jeanne Glaeser of Detroit, Michigan and Audrey Larson of Detroit, Michigan, or to the survivor or survivors of them. [*In re Burruss Estate*, 152 Mich App at 662.]

*Burruss* interpreted "survivor or survivors of them" to refer to any daughter still alive at the testator's death if any of the other daughters had predeceased the testator. This interpretation created an alternative to the distribution to all three daughters, which appropriately gave effect to the testator's express language (specifically her use of "or"). Yet, this interpretation cannot be reasonably transferred to "to the survivor or survivors thereof," because the group in the first clause of the instant will consists of brothers and sisters *who survived testator*. Testator's use of the word "or" must be given effect, and *Burruss* cannot be read to support ignoring testator's express language.

Similarly, the interpretation by this Court in *In re Holtforth's Estate* cannot trump the language of testator's will here because of the differences between the wills. The testator in *Holtforth* devised his property "*To the seven children of my*

17

Under the plurality's interpretation, the distribution under paragraph A would be subject to the antilapse statute, which would create a distribution through paragraph A different from the distribution through paragraph B, contrary to testator's manifest intent that the distribution through each paragraph be the same.[14] On the other hand, the interpretation set forth in this dissent results in an

_____

*brother, John Holtforth, and the survivor of them, 20/35 of my said estate aforesaid.*" *Id.* at 709 (emphasis in original). The devise to John's seven children was not limited to only those children alive at the time of the testator's death, in contrast to the devise here to "brother[s] and sisters that survive me." Additionally, the testator's use of "and" does not denote an alternative like the word "or" does.

[14] The antilapse statute creates a substitute devise when "a devisee fails to survive the testator and is a grandparent, a grandparent's descendant, or a stepchild of" the testator. MCL 700.2603(1). The substitute devise "is created in the surviving descendants of a deceased devisee." MCL 700.2603(1)(b). When a substitute devise is created, the property is distributed as follows:

> Each surviving devisee takes the share to which he or she would have been entitled had the deceased devisees survived the testator. Each deceased devisee's surviving descendants who are substituted for the deceased devisee take by representation the share to which the deceased devisee would have been entitled had the deceased devisee survived the testator. [MCL 700.2603(1)(b).]

If the will, however, creates an "alternative devise" for the devise potentially subject to the statutory substitute devise, the substitute devise does not apply and the distribution through the alternative devise takes place. MCL 700.2603(1)(d). Thus, unless testator provided an alternative devise, substitute devises would be created for paragraph A, because testator's predeceased siblings are descendants of testator's grandparents.

Under the statutory definition of "alternative devise," the plurality's interpretation does not create an alternative devise for testator's predeceased siblings. An "alternative devise" is a devise "expressly created by the will and, under the terms of the will, can take effect instead of another devise on the happening of 1 or more events . . . ." MCL 700.2601(a). The plurality's interpretation does not create an "alternative devise" for siblings "that [did not]

18

identical distribution under paragraphs A and B, which is not altered by the antilapse statute, thereby enforcing testator's use of the same language in each of those paragraphs. [15]

---

survive me" with "the survivor or survivors thereof," because each phrase as interpreted by the plurality, as I have just demonstrated, can *only* include siblings who were still living at testator's death. Thus, the devise to "survivor or survivors thereof" *never takes effect* under the plurality's interpretation. That is, if the gift does not pass to a sibling because he did not "survive [testator]," then the gift also does not go to the sibling under the second clause because he is not a "survivor." Consequently, the devise to "the survivor or survivors thereof" does not create an "alternative devise" under the antilapse statute, because it does not "take effect *instead*" of the devise to "brother[s] and sisters that survive me" in any event. Additionally, the plurality erroneously relies on *Burruss* in concluding that the antilapse statute does not apply, see *ante* at 6 n 10, because the version of the statute in *Burruss* did not contain the express statement that "words of survivorship . . . are not, in the absence of additional evidence, a sufficient indication of an intent contrary to the application of" the provision creating a substitute gift. MCL 700.2603(1)(c).

In the end, the plurality's interpretation, in combination with the application of the antilapse statute, leads to disparate distributions through paragraphs A and B. The antilapse statute only applies when the predeceased devisee is testator's grandparent or a descendant of testator's grandparent, MCL 700.2603(1), which descendants of *Claude's* grandparents are not. Accordingly, under paragraph B, Claude's siblings who survived testator, pursuant to the plurality's interpretation, would receive the total 50 percent portion set aside for his family with the descendants of predeceased siblings receiving nothing. Yet, when the antilapse statute is applied to paragraph A, "[e]ach surviving [sibling] takes the share to which he or she would have been entitled had the deceased [siblings] survived the testator." MCL 700.2603(1)(b). The share that a predeceased sibling would have recovered had the sibling survived testator goes to the predeceased sibling's descendants. *Id.* Thus, the descendants of testator's siblings who predeceased her would be entitled to her predeceased siblings' shares through application of the antilapse statute, whereas the descendants of *Claude's* siblings who predeceased testator would not be entitled to *any* shares.

[15] The interpretation of "the survivor or survivors thereof" set forth here satisfies the definition of an "alternative devise" under the antilapse statute because the devise to a predeceased sibling's descendants arises from the will's

19

Finally, the plurality's interpretation does not establish alternative beneficiaries who would retain the 50 percent portion of the residuary estate under paragraph B with Claude's family if all of Claude's siblings had predeceased testator.[16] See *In re Raymond Estate*, 276 Mich App at 40-41 (Murphy, J., dissenting). If no sibling could recover under paragraph B, the 50 percent portion set aside for Claude's family would be distributed under the state's intestacy statutes, which only distribute a testator's estate to the testator's heirs at law, who do not include any of Claude's family.[17] *In re Martz's Estate*, 318 Mich 293, 301; 28 NW2d 108 (1947). In such a situation, Claude's family would receive no distribution, in contravention of testator's intent that each family receive an equal 50 percent portion of the residuary estate under all circumstances, and "all" of the estate would not be distributed through paragraphs A and B, in direct opposition to testator's intent.[18]

---

express language, takes effect when a sibling has predeceased testator, and takes place "instead" of the devise to the predeceased sibling. See MCL 700.2601(a). Thus, the alternative devise is enforced in lieu of the antilapse statute's substitute devise. MCL 700.2603(1)(d).

[16] Rather than interpreting "survivor or survivors thereof" in a manner that sustains testator's intent to avoid such a situation, the plurality effectively construes the second clause to be inoperative, because if none of Claude's siblings "survived [testator]," then no one is available to recover under paragraph B because only siblings who are alive are "survivors" under the second clause.

[17] Heirs at law include descendants of a testator's parents but do not include descendants of the testator's spouse's parents. MCL 700.2103.

[18] Additionally, under the plurality's interpretation, if all of testator's and Claude's siblings had predeceased testator, testator's attempt to distribute "all" of

20

The different distributions provided by the plurality and by this dissent illustrate the importance of giving meaning to *all* of a testator's words. The interpretation of the plurality, in my judgment, will leave uncertainty and doubt in its wake. By contrast, the interpretation of this dissent would leave testators confident that the precise words by which they choose to pass on their estate will be given full effect by the state.

## VI. Conclusion

For these reasons, I would remand to the probate court for that court to divide the residuary estate as outlined earlier. The shares going to the "survivor or survivors" of testator's and Claude's siblings who predeceased testator should be distributed in accordance with MCL 700.2106(1).

Stephen J. Markman
Michael F. Cavanagh

Hathaway, J., did not participate in the decision of this case in order to avoid unnecessary delay to the parties in a case considered by the Court before she assumed office by following the practice of previous justices in transition and participating only in those cases for which her vote would be result-determinative.

---

her estate through the will would have been futile, because the will would have no bearing on the distribution under those circumstances.

21